[Sac. No. 1760.   Department One.—October 4, 1910.]

CONTINENTAL BUILDING AND LOAN ASSOCIATION (a Corporation), Appellant, v. EMMA A. BOGGESS et al., Respondents.

AGENCY—NOTICE TO PRINCIPAL—AGREEMENT MADE BY ATTORNEY.—Notice is imputed to a principal of the terms of an agreement made by his attorney acting for and on his behalf.

MORTGAGE—PAYMENT—MONEY RECEIVED BY MORTGAGEE FOR MORTGAGOR. —In an action to foreclose a mortgage, the evidence is held sufficient to sustain the findings to the effect that a trust agreement was made on behalf of the plaintiff whereby any moneys received by it from the sale of certain mining properties, over and above other preferred claims, were to be applied in payment of a claim of the defendant, and that sufficient money to pay the defendant's claim was subsequently received by the plaintiff, which it was equitably bound to apply in payment of the mortgage debt.

ID.—OBLIGATION OF MORTGAGEE TO PAY MORTGAGE DEBT.—It is immaterial to the obligation of the plaintiff to pay the defendants' claim out of the surplus funds that came into its hands, that such surplus did not come to it directly from the trustees under the agreement.

APPEAL from a judgment of the Superior Court of Yuba County and from an order refusing a new trial. Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, and Thomas J. Geary, for Appellant.

W. W. Sanderson, and W. H. Carlin, for Respondents.

SLOSS, J.—This is an action to foreclose a mortgage given by Emma A. Boggess and Riley A. Boggess to plaintiff to secure the payment of a promissory note for three thousand dollars. The defendants had judgment, from which, and from an order denying a motion for a new trial, plaintiff appeals.

Upon a former appeal (*Continental Building & Loan Assoc.* v. *Boggess*, 145 Cal. 30, [78 Pac. 245]), this court reversed a judgment of foreclosure entered in favor of plaintiff. That judgment followed an order of .the trial court striking out certain allegations of the answer of the defendants. The holding on appeal was that these averments constituted a good equitable defense to the action. This holding is binding on the present appeal, as the law of the case, and its correctness is not, in fact, questioned.

Upon the second trial the court below found that the facts so averred were. true. The principal contention of the appellant is that the evidence fails to support these findings.

The findings on the special defense set forth in substance these facts: Before and at the time of the execution of the note and mortgage in suit, Riley A. Boggess was interested in certain mining property in Colusa County known as the Abbott mines and owned a majority of the capital stock of the Empire Quicksilver Mining Company, a corporation which held options on said Abbott mines and other mining ground. The property covered by the mortgage here sued upon was the separate property of Emma A. Boggess and she borrowed from plaintiff the three thousand dollars secured by said mortgage and loaned said sum to the Empire Quicksilver Mining Company. Thereafter and up to November, 1900, William Corbin, who was a director and the secretary and manager of the plaintiff corporation, advanced from time to time large sums of money aggregating one hundred and sixty-five thousand dollars to the Empire Quicksilver Mining Company for the operation and development of said Abbott mines. Of this sum one hundred and fifty-nine thousand dollars was taken by him from the funds of the plaintiff. Upon the discovery by the directors of the plaintiff corporation that Corbin had so misused the corporate funds, Corbin assigned and

transferred to the plaintiff corporation his claim against said mining company. Of the correctness of the findings to this point there is no question. But the appellant attacks further findings which are as follows: Thereafter, on or about the twelfth day of January, 1901, an agreement was entered into between the defendant Riley A. Boggess and others, owning in the aggregate more than two thirds of the stock of the Empire Quicksilver Mining Company, on the one hand, and R. T. Harding, representing the plaintiff as its attorney and one of its directors, on the other, whereby the said mining company was to execute a mortgage in the sum of three hundred and seventy-seven thousand dollars upon all its property to R. T. Harding and Charles Page, as trustees, the said trustees undertaking and promising to pay out of any funds that might come into their hands by reason of said mortgage and from the Abbott and adjacent mines in the following order: 1. Such sums as should be necessary to clear title to said mines; 2. Certain debts aggregating about forty-nine thousand dollars due by said Empire company to certain creditors other than the plaintiff, including the moneys due and unpaid to the defendant Emma A. Boggess (which was the amount due on her promissory note and mortgage) ; and, 3. After said payments aforesaid, the amount due by the Empire company to the plaintiff. Such mortgage in the sum of three hundred and seventy-seven thousand dollars was accordingly executed by the Empire Quicksilver Mining Company to Harding and Page and was accepted by the latter upon the trusts and agreements above set forth. Thereafter, and while said mortgage was in full force and effect, there was paid to said trustees the sum of two hundred and sixty-eight thousand dollars, out of which the trustees paid the cost of perfecting title to said Abbott mines and adjacent mines, expending therefor the sum of one hundred and seventy-six thousand dollars, and further sums aggregating seventeen thousand dollars, but said trustees refused to pay the amount due and unpaid to the creditors of said Empire company (including said Emma A. Boggess) other than the corporation plaintiff, but on the contrary paid over the residue of said proceeds in the sum of seventy-five thousand dollars to the plaintiff in payment of the moneys misappropriated from it by Corbin as aforesaid, and the plaintiff corporation thereby

received "as moneys of said trustees agreed to be paid to the defendant Emma A. Boggess, the full amount of all moneys at that time due, owing on or unpaid in any way from her to plaintiff upon or in connection with . . . said promissory note or mortgage." It is further found that at the time of the execution of said mortgage of three hundred and seventy-seven thousand dollars, and of the receipt of said seventy-five thousand dollars, the plaintiff had knowledge of all the terms of the trust undertaken by said trustees Harding and Page and of the rights of the defendant Emma A. Boggess, and likewise said defendant Emma A. Boggess had full knowledge of and consented to said trust so undertaken for her. This is followed by an additional finding that the promissory note sued upon and all of the indebtedness of the defendant Emma A. Boggess secured by said mortgage was fully paid to and received by plaintiff.

In examining the sufficiency of the evidence to sustain these findings it is perhaps hardly necessary to say that this court cannot undertake to pass upon the truthfulness of the testimony given by the respective witnesses where the record shows a substantial conflict in such testimony and the trial court has accepted the statement of one witness rather than that of another. Here there was a very sharp and decided conflict between Mr. Harding and other witnesses regarding the exact nature of the transaction culminating in the giving of the three-hundred-and-seventy-seven-thousand-dollar mortgage. Mr. Harding testified to a state of facts directly opposed in several important particulars to that found by the court below. But if that court had before it testimony which pointed to the correctness of the facts as found, its determination upon the weight of the evidence is beyond reach in this court.

That the three-hundred-and-seventy-seven-thousand-dollar mortgage was executed to Harding and Page upon the terms and conditions stated in the findings was testified to directly and positively by the witnesses Reece, Arms and the defendant Riley A. Boggess.

There was ample evidence that Harding was acting for and on behalf of the plaintiff, and notice of the agreement made by him was therefore to be imputed to said plaintiff.

The only remaining question of importance is whether the plaintiff did receive out of the sale of the mining property,

over and above the amount necessary to pay the cost of clearing the titles, a sum sufficient to pay the claims of the creditors who were preferred under the agreement which resulted in the giving of the three-hundred-and-seventy-seven-thousand-dollar mortgage. At the time of the execution of the mortgage, Boggess was negotiating on behalf of the Empire company for the sale of all of its properties to New York capitalists. There is evidence, i. e., that of Boggess, to the effect that two hundred and fifty thousand dollars was subsequently paid on account of this purchase, fifty thousand dollars "in installments in periods of two or three months, the first installment being about February 2nd or 3rd, 1901, and then the $200,000 was paid on or about the 4th of May, 1901." The disposition of that money is thus stated by Boggess: "That money went into the Continental Building & Loan Association and was paid to Mr. Corbin, he handled the $250,000. $176,000 net was used in getting title; that was for the Sulphur Banks and the Abbott, and the rest of the $250,000 and about $30,000 which he received from the net earnings of the mine went into the Continental Building & Loan Association. Outside of that it was required for title to the mines as stated, $176,000 and $10,000 which was paid to a man by the name of Watson and $4,000 to Mr. Reece on account of his notes; it was paid into the Continental Building & Loan Association; about $60,000 to the Continental Building & Loan Association; that is where it ultimately went." The statement that some part of the money paid by the prospective purchasers went into the hands of the plaintiff is corroborated by Harding's testimony on cross-examination.

There is, then, evidence sustaining the findings to the effect that an agreement was made on behalf of plaintiff whereby any moneys received by it over and above the amount necessary to clear title were to be applied in payment of the claim of the defendant Emma A. Boggess and that sufficient money to pay this amount was subsequently received by the plaintiff. Under these facts the plaintiff as declared on the former appeal (see 145 Cal. 34, [78 Pac. 345]) became equitably bound to apply the money received by it in payment of her debt to it.

We need not stop to inquire whether or not there is evidence to support that part of the findings which states that the

money came into the hands of Harding and Page as trustees and was by them paid to the Continental Building & Loan Association. If the money resulting from the sale or operation of the mines did actually come into the hands of the plaintiff, it is immaterial whether it came through the medium of the trustees or otherwise. The essential point is that, according to findings which are sustained, the plaintiff agreed to pay the claim of Emma A. Boggess out of any surplus moneys received from the mines, after paying the cost of clearing title. It was bound to apply any surplus moneys so received, whether or not they came to it directly from the trustees. The findings last referred to are, therefore, not material.

In addition to the attack on the sufficiency of the evidence the only point made by appellant is that the court erred in permitting the defendant Emma A. Boggess to testify that her husband had told her of the terms of the agreement whereby the mines were mortgaged to Harding and Page, and that she had consented thereto.

This testimony was offered for the purpose of showing notice to Mrs. Boggess of an agreement made for her benefit and ratification of the same by her. If it was necessary to prove such ratification, the testimony was competent. If not, it is impossible to see how its admission could have prejudiced the appellant.

The judgment and order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.