[No. 7,086.—In Bank.]

THE CITY OF LOS ANGELES v. J. J. MELLUS ET AL.

BOND—OFFICIAL BOND—ERASURE.—In the official bond of a city treasurer, the name of R. was originally written, in the body of the bond, as one of the sureties; but erased after the execution of the bond by the other sureties.

Held: The liability of the other sureties was not affected by the erasure of R.'s name or his failure to sign the bond.

ID.—EXECUTION OF BOND.—The signer of a joint and several bond can not deny its binding obligation, even where it appears on its face to be drawn for the signature of others, and they are not annexed, unless he declared at the time that he would not be bound without such signatures were obtained.

FORMER ADJUDICATION—JUDGMENT ON DEMURRER TO COMPLAINT.—A judgment on demurrer to the complaint leaves the plaintiff at liberty to present his complaint in another action so amended in form or in substance as to be no longer vulnerable to the attack made in the former suit; and such a judgment can never be pleaded in bar to a good complaint for the same cause of action.

Los Angeles—Depositary of City Moneys—Treasurer—Breach of
    Official Bond—Principal and Agent.—Under the Act of March 26,
    1874, to amend the charter of the city of Los Angeles, the banking firm
    of T. & W. was appointed and duly qualified as depositary of the city
    money, and it was the duty of the Treasurer to deposit with it all city
    moneys. The money was deposited by the Treasurer with T. & W. to
    his own credit, and he refused, on demand of the Council, to transfer it
    to the credit of the city; but T. &. W. knew that the money was the
    money of the city.' In an action against M., the Treasurer, and his
    sureties upon their official bond (T. & W. having failed),
    *Held:* The manner in which M. used the money of the city prevented the
    city from getting any interest on it, and rendered the bond given by the
    bank and its sureties ineffectual to secure the city against the loss con-
    sequent upon its failure; and M. and his sureties therefore became liable
    on their bond.

Appeal by the plaintiff from a judgment in favor of the
defendant Pio Pico, and from an order denying a new trial in
the Seventeenth District Court of the County of Los Angeles.
Sepulveda, J.

*John F. Godfrey,* for Appellant.

*Glassell, Smith & Smith,* for Respondents.

Morrison, C. J.:

On the seventh day of December, 1874, the defendant Mel-
lus was elected Treasurer of the City of Los Angeles for the
official term next thereafter ensuing, and on the twelfth day
of December, 1874, he, as principal, and the other defendants
as sureties, made, executed, and delivered to the plaintiff, as
an official bond of the said Mellus, as such City Treasurer,
their obligation in the sum of seventy-five thousand dollars,
whereby the principal bound himself in the full sum of sev-
enty-five thousand dollars, the defendant Temple in the sum
of twenty-five thousand dollars, the defendant Allen in the
sum of fifteen thousand dollars, the defendant Bouton in the
sum of five thousand dollars, the defendant Pico in the sum
of twenty-five thousand dollars, and the defendant Thom in
the sum of five thousand dollars, on the condition that the
defendant Mellus " shall well and faithfully perform all the
duties of his said office required by law, and shall pay over
all moneys that may come into his hands, in pursuance of the
requirements of the statutes of said State, and shall faith-

fully execute and perform all the duties of such office required by any law to be enacted subsequently to the execution of this bond." On the fourteenth day of December, 1874, the official bond was presented to and was approved by the Mayor of the City of Los Angeles, and thereupon the defendant Mellus entered upon the discharge of the duties of Treasurer of said city, and continued to discharge the duties of his office down to the fourteenth day of March, 1876, at which last-named date he was removed therefrom, and one Huber became his successor by appointment of the Mayor and Common Council of the city. The complaint alleges that at the time of his removal, the defendant Mellus had in his hands moneys of the City of Los Angeles, collected by him as City Treasurer, amounting to the sum of forty-one thousand eight hundred and six dollars and twenty-one cents, gold coin, which sum of money was demanded of him by the Treasurer Huber, and of the amount then in his hands, as aforesaid, only the sum of eighteen thousand seven hundred and twenty-two dollars and seventy-four cents was paid over by the defendant Mellus to his successor Huber. This, it is claimed, left a balance in the hands of Mellus of twenty-three thousand and eighty-three dollars and forty-seven cents, of the moneys of the city, which has never been paid. It is to recover the last-named amount that this action is brought. Judgment was entered in the Court below in favor of the defendant Pico (the action having been tried against him separately), and from that judgment the City of Los Angeles prosecutes this appeal.

The following are the findings of the Court:

"1. The bond set out in the complaint was not executed by the defendants; but a document similar to said document in every respect, except that the name *Manuel Requena* was written therein after the words '*James J. Mellus as principal,*' and was signed by them in the following manner and under the following circumstances: The same document, with James J. Mellus' name signed thereto, was deposited with A. W. Potts and the several defendants, one by one, in the order in which their names appear to the document set out in the complaint. All went to the office of the said Potts and signed their names, and as each signed, his name was written in the

body of the document by the said Potts. After the said document was signed by the defendant Thom, the name of Manuel Requena was erased therefrom, and the same was, by the said Mellus, given to the Mayor, and having been approved by him, was filed with the Clerk of the Council.

"2. On the fourteenth day of March, 1876, the said Mellus was removed from his position of Treasurer, in the manner stated in the complaint and in the answer of the defendant Pico; and the Court finds that the allegations of the complaint and answer with reference to the said removal and the proceedings instituted by the defendant Pico to be released from his bond, are true.

"3. At the time of the removal of said Mellus, there was in his hands to the credit of the plaintiff, the sum of eighteen thousand seven hundred and twenty-two dollars and seventy-four cents, and this amount was, by the said Mellus, paid over to the succeeding treasurer of the plaintiff, on demand. And this was all the money of the plaintiff in the hands of said Mellus, or for which he was accountable.

"4. On the thirteenth day of May, 1875, under the provisions of the act of the Legislature entitled 'An act to amend the charter of the city of Los Angeles,' etc., approved March 26, 1874, and after all the proceedings required by said act had been duly and regularly taken and had, the firm of Temple & Workman, bankers, of the city of Los Angeles, were appointed the depositaries of the public moneys of said city, and thereupon the said Temple & Workman duly executed the contract required by law; and the said contract was duly approved by the Council of said city, and signed by the Mayor thereof on behalf of said city, and thereupon the said Temple & Workman duly executed the bond required by said act, for the proper amount and with proper and sufficient sureties for the faithful keeping and proper disbursement of all such moneys, and thereupon the said Council, after approving said bond, which was also duly approved by the Mayor, by ordinance duly and regularly passed and adopted, directed the City Treasurer to deposit with said Temple & Workman, bankers, as aforesaid, all public moneys of the city then in his hands, or afterwards by him to be collected.

"The said contract and ordinance are set out in, or attached

to, the answer of this defendant and are made part of this finding.

"5. Prior to the passage of said ordinance, the defendant Mellus had been depositing the money of the city of Los Angeles in the bank of Temple & Workman, and the account thereof in said bank was kept in the name of '*J. J. Mellus;*' and there was at that time money of said city in said bank. Afterwards, the Tax Collector of the said city, J. J. Carrillo, from time to time, by direction of said Mellus, deposited moneys of the city collected by him with the said bank, and the said Mellus also deposited other moneys of the city. And when the said bank closed, on the twelfth day of January, 1876, there was a balance of city moneys in its hands of twenty-three thousand and eighty-three dollars and forty-seven cents.

" The defendant Mellus, from the date of the appointment of Temple & Workman as depositaries of the city moneys, was in the habit of drawing checks upon the said depositaries in favor of city creditors or treasurer, said checks being variously signed as ' J. J. Mellus, C. T.,' or ' J. J. Mellus, Treasurer, by C. W. Gould, Deputy,' or otherwise officially.

" The said Temple & Workman, from the time of their appointment as depositaries, knew that the said money deposited with them was the money of the city; and they were entitled to keep and hold said money, and to disburse the same only in accordance with the provisions of their contract with the plaintiff; and were not authorized to disburse it in any other way.

" 6. On the seventeenth day of May, 1876, the plaintiff commenced an action in this Court against the defendants in this action, for the same cause of action as is stated in the complaint. In said action defendants filed demurrers to the amended complaint on the ground that the said complaint did not state facts sufficient to constitute a cause of action. The said demurrers were sustained by the Court, and the plaintiff declined further to amend his complaint, and thereupon final judgment was rendered and entered in said action in favor of said defendants and against said plaintiff, which said judgment was afterwards and prior to the beginning of the suit affirmed by the Supreme Court on appeal."

Subsequently additional findings were filed, as follows:

"I. The defendant Pio Pico did not, at the time of the signing of the bond, impose any conditions consequent upon its delivery to the plaintiff.

"II. At the time of defendant Pico's application to be released from the bond as surety, the twenty-three thousand and eighty-three dollars and seventeen cents had not been received by plaintiff.

"III. The said Mellus was, on the twelfth day of January, 1876, notified by a committee of the council of the City of Los Angeles to deposit the funds of the city to the credit of the city, so that it would appear that it was the city money, and not his private money deposited there, which he did then and there refuse to do.

"IV. The bond offered in evidence showed the names written in the following order and form: 'James J. Mellus, as principal, F. P. F. Temple, Gabriel Allen, E. Bouton, Pio Pico, and C. E. Thom, as sureties, are firmly bound,' etc.

"V. On the twelfth day of January, 1876, there was a balance of city moneys in the bank of Temple & Workman amounting to twenty-three thousand and eighty-three dollars and seventeen cents; said amount and money has never been received by the plaintiff."

The first question that arises on the foregoing findings relates to the effect of erasing the name of Manuel Requena from the bond. Requena did not sign the bond, and there is no evidence in the transcript to show that it was ever understood by the defendant Pico that he would sign it. The signing of Pico was, therefore, in no manner dependent upon the condition that Requena would become co-surety. The case is very different from that of the *City of Sacramento* v. *Dunlap*, 14 Cal. 424—and that case is an authority *against* and not in favor of the defendant. The bond which the Court was considering in that case was a joint bond. The Court said: "The instrument in this case is in form a joint bond only, and not joint and several, and in this respect differs materially from the bonds in the cases of *Parker* v. *Bradley et al.*, 2 Hill, 584; *Cutter* v. *Whittemore*, 10 Mass. 442; and the *State of Ohio* v. *Bowman*, 10 Ohio, 445, cited

by the respondents. The sureties may have been willing to bind themselves jointly with Dunlap, and still unwilling to make themselves alone responsible, as upon an independent contract with the city; at any rate, they only undertook to bind themselves jointly with him, and we can not change the nature of their contract, by holding them liable, without his signature. There are numerous authorities to the effect that the signer of a bond can not deny its binding obligation, even where it appears upon its face to be drawn for the signature of others, and they are not annexed, unless he declared at the time that he would not be bound without such signatures were obtained. (Such is the case of *Cutter* v. *Whittemore*, 10 Mass. 444.) They all, however, refer to joint and several bonds. In such instruments each obligor is separately bound, and there is reason in the doctrine. If he would limit his liability, he must impose conditions upon the delivery of the instrument at the time of its execution. The doctrine can have no application to bonds which are joint only, and not several."

The bond sued on in this case is not, as between the sureties, a joint bond, as each surety undertakes for himself, and independently of the others, in a designated amount. Their liability, instead of being joint, is several, and largely different; one undertaking and binding himself in the sum of twenty-five thousand dollars, and another limiting his liability to the sum of five thousand dollars. We think, therefore, that the failure of Manuel Requena to sign the bond did not affect the liability of the defendant Pico thereupon.

2. The second point is, that the final judgment on the demurrer to the first complaint filed by the plaintiff is a bar to this action. The first complaint contains the following averment: "On the fifteenth day of March, 1876, by virtue and in pursuance of proceedings regularly had and taken before the then qualified and acting Mayor of said city, and under Sections 972, 973, 974, and 975 of the Political Code of this State, *an order was made* and entered by the Mayor of said city, removing the defendant Mellus from the office of City Treasurer, and declaring such office vacant," etc. To this complaint there was a general demurrer, setting forth that the complaint did not contain facts sufficient to constitute a

cause of action; the demurrer was sustained, and the plaintiff, declining to amend, final judgment passed in favor of defendants. The case was appealed to the Supreme Court, and the judgment below was affirmed. The ground of decision was that in setting out the proceeding which resulted in the removal of the defendant Mellus from his office of City Treasurer, the allegations of the complaint were insufficient under Section 456 of the Code of Civil Procedure, which provides that "in pleading a judgment or other determination of a Court, officer, or board, it is not necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been *duly given or made.*" It was held in *Young* v. *Wright,* 52 Cal. 410, that " a party wishing to avail himself of a provision of this character must comply strictly with its terms. In exonerating him from an obligation which would otherwise be incumbent upon him, the statute provides the precise conditions on which he is to be relieved, and they must be strictly performed. In this case the averment is not that the judgment was duly '*given or made,*' but that it was '*duly rendered,*' and we are inclined to think that these are not equivalent terms. · * * * The statute defines the precise terms on which a party pleading a judgment may be excused from stating in his pleading the jurisdictional facts; and to prevent the necessity of construing doubtful phrases in order to determine whether they are of equivalent import, the better practice is to require the pleader in such cases to pursue the statute strictly."

Applying the principle announced in the above case to this, it appeared to the Court, and it was held that the complaint was bad, because it did not comply with the statutory provision referred to, and therefore the final judgment entered upon the demurrer was affirmed. But the complaint now under discussion is different from the first in two important particulars. First, it contains an averment that the order of removal was " duly made," and, secondly, it contains another averment, which was in itself sufficient, without any averment respecting the removal of Mellus by the Mayor or the demand by Huber. The additional averment is, "that on the fourteenth day of December, 1876, I. M. Hellman was elected City Treasurer of said city for the official term next there-

after ensuing; that he duly qualified on the fifteenth day of December, 1876, as such Treasurer, and ever since has been and now is, the duly elected, qualified, and acting Treasurer of said city." * * * And, "that on the eighth day of January, 1878, the said I. M. Hellman demanded of said Mellus the said sum of twenty-three thousand and eighty-eight dollars and forty-seven cents, gold coin, but though demanded, the said Mellus refused to pay the same or any part thereof to said Hellman or to plaintiff, or into the treasury of the city, but the whole thereof remains unpaid."

Thus it will be seen that all the averments of the complaint respecting the removal of Mellus, the appointment of Huber, and the refusal of Mellus to pay over to him may be eliminated from the complaint, and we have the allegations of the election of Hellman after the expiration of the term for which Mellus was elected, the demand made by Hellman upon him (Mellus) for the money, and the refusal to pay the same over to his successor.

Are the two complaints substantially the same, and is the final judgment on the demurrer to the first complaint a bar to a recovery in the second action? We are of the opinion that the complaints are not the same, and that the judgment is not a bar. It is said by Mr. Freeman in his work on Judgments, Section 267, that "a judgment on demurrer to the plaintiff's complaint is conclusive of everything necessarily determined by such judgment. If the Court decides that plaintiff has not stated facts sufficient to constitute a cause of action, or that his complaint is otherwise liable to any objection urged against it upon demurrer, such decision does not extend to any issue not before the Court on the hearing of the demurrer. It leaves the plaintiff at liberty to present his complaint in another action so amended in form or in substance, as to be no longer vulnerable to the attack made in the former suit." To the same effect is the decision of the Supreme Court of the United States in the case of *Gilman* v. *Rives*, 10 Pet. 301, in which Mr. Justice Story, delivering the opinion of the Court, said: "The objections may be urged, that the judgment upon a general demurrer in this case, will be a good bar to any further suit brought against the present defendant upon the same debt, or against him

and the other judgment debtors.   We are of a different opinion as to both, if the declaration be properly framed; for a judgment that a declaration is bad in substance (which alone, and not matter of form, is the ground of a general demurrer), can never be pleaded as a bar to a good declaration, for the same cause of action.   The judgment is in no just sense a judgment upon the merits.   If authority be wanting for this position, it will be found in the case of *Lampen* v. *Kedgewin*, 1 Mod. 207," and the Supreme Court of Kentucky in the case of *Birch etc.* v. *Funk*, 2 Metc. 547, says: "This principle has been repeatedly recognized and acted on by this Court. In the case of *Kendal* v. *Talbot*, 1 A. K. Marsh. 321, it was held that a judgment rendered for the defendant on the ground of the *insufficiency of the plaintiff's declaration* can not be a bar to another action *founded on the same contract.*"   See also *Thomas* v. *Hite*, 5 B. Mon. 594.   The same doctrine is announced by the Supreme Court in the case of *Gerrish et al.* v. *Pratt et al.*, 6 Minn. 61, and also in the case of *Terry* v. *Hammond*, 47 Cal. 32.

We think that it satisfactorily appears from the foregoing authorities, as well as upon principle, that the judgment on the defective complaint is not a bar to the action on this complaint, which is free from all legal exceptions.

3. The Court below found that the money sued for was in the banking house of Temple & Workman at the time that house failed and closed business, on the twelfth day of January, 1876, and that it was deposited there by the Treasurer, under a contract made by the city authorities on the one side, and the banking house of Temple & Workman on the other. By the act amending the charter of the City of Los Angeles, approved March 26, 1874 (Stats. 1873-4, p. 633), the city was authorized to deposit its moneys with any bank of deposit in the city, upon terms and conditions to be prescribed in a contract between the city and such depositary, and, in pursuance of the provisions of that act, the banking house of Temple & Workman was selected as the depository of the funds of the city. If, therefore, the moneys of the city had been placed on deposit with Temple & Workman, in the manner contemplated by the act of the Legislature, the Treasurer and his bondsmen would have been no

longer liable, and the loss resulting from the failure of the
bank would have fallen upon the city and not upon them.
The principal object of the law was to enable the city to ob-
tain interest upon its surplus money; and the bond given to
the city by Temple & Workman contained an agreement that
" they would on the first day of June, 1876, upon demand
made upon them by the said party of the first part, or any
one thereunto authorized by the said party of the first part
(the city), pay over to the said party of the first part, or such
other party duly authorized to receive the same, all balance
of money on deposit with them and to the *credit of said party
of the first part,* together with the interest accrued thereon."
But the Treasurer in dealing with the money received by him,
paid no regard to the act of the Legislature of 1874, referred
to above, as clearly appears from the following uncontradicted
evidence of the witness Kurtz: " Was a member of the City
Council of Los Angeles, twelfth January, 1876; was on the
Finance Committee.   In accordance with instructions of the
City Council, I called on Mellus about two o'clock of the
twelfth of January, 1876.   I know it was on the twelfth, be-
cause the bank of Temple & Workman failed to open on the
thirteenth; it was the day before the bank stopped business,
about two o'clock P. M.   Other members of the Finance Com-
mittee were with me.   We told Mr. Mellus that Temple &
Workman had given a bond to the city to keep the city
money; that we understood the city money was deposited in
his name; and Temple & Workman had no money appearing
to have been deposited under their contract; and their bond
would not be held for it; and we had orders from the Coun-
cil to direct him to deposit the city money with Temple &
Workman to the credit of the city, so it would appear that it
was the city money, and not his private money deposited
there.   He said he would take care of his own affairs; he
had given his bond, and was elected Treasurer, and he had
taken legal advice of Mr. Thom, who said the law obliging
him to pay over the money to Temple & Workman, under
their contract, was unconstitutional, and he should do with
the money as he thought best; that he and his bond were re-
sponsible.   So we made out a report to the Council the next
day.   This was about two o'clock in the afternoon.   We had

failed to get any interest from Temple & Workman for the use of the city money, and their excuse was that they had no city money; that Mellus deposited there on his own account, and they had nothing to show that they had the city money, and they could pay no interest to the city, unless they had something to show that they were using the city money, and not Mellus' private money. It was for this reason that the city wanted the interest, that we made this demand on Mellus: we did not suppose the bank was going to fail. We saw Mellus about two o'clock; the bank then appeared to be doing business the same; no suspicion that that was the last day it would do business. Mellus said his lawyers told him not to make the transfer, and he wouldn't do it."

The whole object of the law was defeated by the action of the Treasurer. The manner in which he used the money of the city prevented the city from getting any interest upon it, and rendered the bond given by the bank and its sureties ineffectual to secure the city against the loss consequent upon the failure of Temple & Workman. We are of the opinion that the judgment and order must be reversed.

It is proper for us to remark that this case is very different from the case of *Los Angeles* v. *Mellus*, 58 Cal. 16. In that case the transcript did not contain the complaint filed in the first case against the defendants, so that we could consider the same, and we were therefore obliged to accept as true the findings of the Court below, that the complaint was the same in both cases, and that the final judgment in the first action was a bar to the second action. But in this case the complaint is properly brought before us, and we are enabled, by an inspection of the record, to see the difference between the two complaints—the first being bad in substance, and the other good.

Judgment and order reversed and cause remanded for a new trial.

Sharpstein, Myrick, McKinstry, Thornton, and McKee, JJ., concurred.

Mr. Justice Ross took no part in the decision of this case.