[Civ. No. 2926.   Second Appellate District, Division Two.—August 11, 1919.]

## S. C. DODGE, Appellant, v. CHAS. D. CHAPMAN et al., Respondents.

[1] LANDLORD AND TENANT—MODIFICATION OF LEASE—CHECKS AND RECEIPTS AS EVIDENCE.—Checks issued by lessees for a less amount than is called for by their lease, together with receipts signed by the lessor for the full amount of rent reserved in the lease, do not constitute evidence of a contract in writing to modify the terms of the lease.

[2] ID.—OBLIGATIONS OF WRITTEN LEASE—CHANGE BY ORAL AGREEMENT.—By orally agreeing with his lessees to take a decreased rental for the leased premises for a limited period, there being no consideration for such agreement, the lessor does not thereby change the obligations of the written lease.

[3] ID.—VOLUNTARY ACCEPTANCE OF DECREASED RENTAL—WANT OF ENFORCEABLE ALTERATIONS—LIABILITY OF SURETIES NOT CHANGED. Where there were no valid and enforceable alterations in the obligations imposed by the original lease, such voluntary acceptance of a reduced rent for a limited period in no way changed the liability of the sureties on the bond guaranteeing faithful performance of the conditions of the lease.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Paul J. McCormick, Judge.   Reversed.

The facts are stated in the opinion of the court.

W. J. Ford and Ford & Hammon for Appellant.

Arthur Wright for Respondents.

SLOANE, J.—The plaintiff, Dodge, executed a lease of a rooming-house property to one Plevros. The lessee was not privileged to assign without lessor's written consent. An agreement was made whereby plaintiff consented to an assignment negotiated by Plevros to the defendants, Chas. D. Chapman and Anna E. Chapman, husband and wife, on condition that the Chapmans furnish a bond in the penal sum of three thousand dollars for their faithful performance of the conditions of the lease. The Chapmans furnished such bond, with themselves as principals, and the defendants,

J. W. Chapman and W. L. Altenburg, as sureties. The assignment was made by the original lessee, and accepted by the assignees; and the lessor, plaintiff here, indorsed on the lease his written consent to the assignment. The lease was for a term of several years, and the stipulated rent for the period covered by this action was $485.75 per month, payable in advance. The rent payments were kept up for a considerable time, but ultimately became in arrears in the sum of $1,863, whereupon the lessor, Dodge, brought this action against the Chapmans, assignees under the lease, and J. W. Chapman and W. L. Altenberg, sureties on the bond. The assignees, and principals on the bond, Chas. D. Chapman and Anna E. Chapman, defaulted, but the two sureties answered, setting up against their liability as guarantors, among other defenses, that the plaintiff, lessor, had entered into an agreement with their principals subsequent to the execution of the bond, whereby the obligation for which they were guarantors had been changed, and that they were thereby exonerated from liability thereon. The trial court found against them as to the other defenses, but made a finding in their favor as to exoneration by reason of unauthorized modification of the lease contract. Judgment was for the plaintiff against the defaulting principals, but against him as to the sureties on the bond. From this latter part of the judgment plaintiff appeals.

As the findings were against the respondents on the other grounds of their defense, and they are not appealing, the only question to be considered here is whether the evidence justified the findings of the trial court that they were exonerated from liability as guarantors by a subsequent alteration of the lease contract.

The alleged alteration or modification of the obligations under the lease rests on the following undisputed facts: After the assignees under the lease had been in possession for a few months, they complained to the plaintiff, their lessor, that they were, during the dull summer months, unable to pay the full stipulated monthly rental of $485.75, and the lessor orally consented to remit from the amount the sum of $50 per month, for the months of June, July, and August of that year, and to accept $435.75 for each of these months in full satisfaction of the rentals for that period. This arrangement was made on the 2d of June, 1914, and thereupon the

assignees of the lease gave him, their lessor, a check for $435.75 for the month of June, and he in turn gave them a receipt for the month's rent, designating therein the full monthly rental of $485.75. This procedure was repeated for the months of July and August, and was continued for two or three months thereafter, when the assignees of the lease defaulted in, and entirely discontinued, the payment of any rent at all, resulting in the arrears of rentals which form the basis of this action. There was no consideration to plaintiff for the reduction of rent granted, and the agreement to make the reduction was not in writing. [1] The trial court found that this agreement was an alteration of the lease contract, and that it was "partly oral and partly written"; but to reach this conclusion the court erroneously, we think, construed the checks given for the reduced amount and the receipts given therefor in full payment, as being memoranda or writings constituting part of such an agreement. These instruments may be evidence tending to show that the plaintiff received a less amount than the lease called for in full payment of the monthly rental, but they do not evidence any contract to reduce the rent. The receipts, which were the only writings signed by the plaintiff relating to this matter, on their face, in fact, indicate that the full amount of the rents was collected. The checks drawn by the assignees of the lease merely constitute an instrument of payment of a certain sum of money, and have no more evidentiary force than would bank bills received in payment under the same circumstances. The agreement, then, to receive for a limited time a reduced monthly rental was not in writing, and was supported by no consideration. As an agreement in modification of the lease, it therefore was without force or effect. There was no period of time under the lease, when any installment of rent was due and unpaid, that the terms of the lease could not have been enforced for the full amount. [2] In legal effect, then, we have merely this condition: For a period of several months the lessor accepted, without any binding agreement or obligation to do so, a less amount than the lease called for in full satisfaction of the rentals for that period. Conceding that the obligation to pay the stipulated monthly rental was satisfied by these payments, yet the contract was not altered any more than it would have been if the full amount had been paid. It was no concern of the sureties

how these payments were made. The landlord could have taken his pay in "chips and whetstones" if he saw fit. He could have given back to his tenants the whole amount of the rents received, had he wanted to, without changing the obligations of the lease.

Section 2819 of the Civil Code provides that "a guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." It might just as reasonably be argued that the acceptance, when due, of the full amount of monthly rentals called for by the lease, "alters" the original obligation of the principal and "impairs and suspends the rights of the creditor against the principal," as to make such contention as to the acceptance of a partial payment in full satisfaction. Either way it does, in a sense, alter the obligation. It terminates it. But the terms of the contract have not been changed. If the lessor had entered into a binding and enforceable agreement changing the terms of the lease as to the monthly rentals, a different question would be presented. But here the verbal agreement on which the reduced payments were received was invalid. "A promise by a creditor, which for any cause is void, or voidable by him at his option, does not alter the obligation or suspend or impair the remedy," within the meaning of section 2819. (Civ. Code, sec. 2820.) The acceptance of a less amount in satisfaction of the monthly installment then due was a matter outside of and entirely independent of the lease contract. The alleged oral agreement never had any executory force as a contract modifying the lease, however effective the payments may have become after their acceptance in full satisfaction of the rent installments.

Such seems to have been the effect of the ruling of the supreme court in *Sinnige* v. *Oswald,* 170 Cal. 55, [148 Pac. 201], and in *Estate of McDougald,* 146 Cal. 196, [79 Pac. 875]. In the former of these decisions, where it was claimed that the lease was changed by the acceptance of a reduced rent, the court says: "The finding that there was no change in the terms of the lease in the alleged particular of reducing the rents is sustained by the evidence. Concessions

of this kind that were shown by the defendants, *when supported by a consideration,* are valid to the extent that lower rent has been tendered and accepted as satisfaction in full of the installments thus paid. They are not sufficient to establish a change in the written contract so as to affect the amount of future installments." In the case just cited, there was also involved the liability of guarantors, as in the case at bar; but the guarantors there did not raise the question of exoneration by the alleged change in the terms of the rentals. That such voluntary reductions in rent do . not discharge guarantors is held in the following decisions: *Preston* v. *Huntingdon,* 67 Mich. 139, [34 N. W. 279]; *Dodd* v. *Vucovich,* 38 Mont. 188, [99 Pac. 296]; *Ullmann Realty Co.* v. *Hollander,* 66 Misc. Rep. 348, [123 N. Y. Supp. 772]. The rule contended for by respondents, and laid down by section 2819 of the Civil Code, that any unauthorized alteration in the terms and obligations of the contract secured releases the sureties, and this irrespective of whether or not the sureties are injured or benefited by the change, is conceded. They have a right to stand on the precise contract guaranteed by them, and are bound by no other. But, as already pointed out, the alteration must be one that affects the executory character of the contract.

We find that most of the authorities presented by respondents are not applicable here, for the reason that they deal with a state of facts which show that valid and enforceable alterations in the obligation under consideration had been made. Perhaps the strongest case presented by respondents is that of *Driscoll* v. *Winters,* 122 Cal. 65, [54 Pac. 387] where the guarantor was exonerated because of a change in the contract for which he had pledged himself, which was the payment by his principal for sixteen three-gallon cans of milk daily for the period of one year. It appears in that case "that the contract was modified to the extent that Winters, the principal, should purchase only thirteen cans of milk daily." Just how this change in the obligation of the principal was effected does not appear, but the court finds that the contract was altered in this respect, and we are bound to presume that it was done in such a way as to make a valid and binding change in the terms of the contract. Respondents rely, also, on the rule laid down in *Tuohy* v. *Woods,* 122 Cal. 665, [55 Pac. 683], but in that case the creditor

gave a written extension, for a valuable consideration, on the liability covered by the guaranty. As against this we find, in the case of *Stroud* v. *Thomas,* 139 Cal. 274, [96 Am. St. Rep. 111, 72 Pac. 1008], where the surety claimed his discharge by reason of an extension of time of payment of the liability for which he had become a surety, that there was no exoneration of the surety by reason of the fact that the agreement for extension was invalid and unenforceable for want of consideration. The court says: "The principal defense in the case is that arising upon the extension of time. The court finds that on August 1, 1898, after the note became due, the plaintiff received $150 on account of overdue interest, and thereupon agreed to extend the time of payment one year, and that the agreement was without consideration. . . . This payment merely satisfied to that extent the debt due, and did not constitute a consideration for the agreement. . . . A promise made without any consideration is not binding. Consequently, the agreement for the extension of time was not a valid promise, and would not bind the plaintiff to forbear suit on the note during the time specified in the agreement." It is true that the sureties' liability arose here on the original instrument, and was not an independent contract of guaranty; but the principle involved is applicable, as the surety would have been discharged from liability if the agreement extending time to the principal obligor had been enforceable. "An agreement for forbearance founded on an unenforceable agreement, even though carried out by the creditor, will not discharge the surety." (Brandt on Suretyship, 4th ed., sec. 376; 24 Am. & Eng. Ency. of Law, pp. 826, 829; *Halliday* v. *Hart,* 30 N. Y. 474; *Ingalls* v. *Sutliff,* 36 Kan. 444, [13 Pac. 828].)

[3] There is no merit in respondents' argument that the reduction in the rent in this case extended the liability of the sureties. The three thousand dollars named in the bond is the amount of the penalty of the bond, and the liability of the sureties extended to any unpaid rents during the term of the lease, not exceeding the aggregate amount of three thousand dollars. The acceptance of a reduced rent, when taken in full satisfaction of the amount due, in no way changed the liability on the bond. We think the trial court misapprehended the effect, as evidence of a written agree-

ment, of the checks and receipts exchanged between the parties in the reduced payment of the monthly rentals.

Appellant asks for an order directing judgment in his favor against the sureties on his bond. This we cannot do under the findings.

The judgment is reversed and the case remanded for a new trial as to the defendants J. W. Chapman and W. L. Altenburg.

Finlayson, P. J., and Thomas, J., concurred.