[Civ. No. 5986. First Appellate District, Division Two.—February 7, 1928.]

CHARLES A. WAYLAND, Respondent, v. SADIE CARR LATHAM, Appellant.

Knight, Boland & Christin for Appellant.

Theodore M. Monell for Respondent.

BURROUGHS, P. J., *pro tem.*—This is an action of unlawful detainer after default in payment of rent and three days' notice to pay rent or quit. The cause was tried by a jury and a verdict returned in favor of the defendant. Before the entry of judgment thereon the court, notwithstanding the verdict, on motion of plaintiff, rendered judgment in favor of the plaintiff declaring a forfeiture of the lease, a restitution of the premises, $2,650 rent due and an attorney fee in the sum of $500, together with his costs of suit.

It is the contention of the appellant that the court erred in setting aside the verdict of the jury and substituting its own judgment therefor in that it is claimed the verdict finds substantial support in the evidence.

Before reviewing the evidence we will consider and analyze the law governing the subject of the power of the court to enter a judgment contrary to the verdict of the jury. Section 629 of the Code of Civil Procedure, added to said code in 1923 (Stats. 1923, p. 750), so far as pertinent to this decision, provides: "When a motion for a directed verdict, which should have been granted, has been denied and a verdict rendered against the moving party, the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, shall render judgment in favor of the aggrieved party notwithstanding the verdict." This section of the code has been before the courts for interpretation and construction in several cases. In *Estate of Fleming*, 199 Cal. 750 [251 Pac. 637], it is said: "It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct a verdict. (*Estate of Sharon*, 179 Cal. 447, 459 [177 Pac. 283].) When a motion for a directed verdict, which should have been granted, has been denied, and a verdict rendered against the moving party, it is the duty of the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, to render judgment in favor of the party aggrieved, notwithstanding the verdict. (Code Civ. Proc., sec. 629.) Appel-

lant is here contending that the power of the trial court in these matters is limited, by the provision of the section (*supra*) to granting a motion for judgment notwithstanding a verdict in those cases in which the antecedent motion for a directed verdict 'should have been granted,' and that, therefore, *if for any reason* the motion for a direction by the court was properly denied, the court is without power to grant the motion for judgment notwithstanding the verdict. Her first contention is that the motion for a directed verdict was properly denied, for the reason that the grounds on which it was based were not sufficiently stated, from which it follows, she argues, the court had no authority to grant the motion for judgment notwithstanding the verdict. . . .

"We are of the view that section 629 of the Code of Civil Procedure relates to the granting of a motion for judgment notwithstanding the verdict in a case in which the motion for a directed verdict 'should have been granted' on the evidence, and does not lend itself to the narrow construction appellant attempts to put upon it."

█ The foregoing decision definitely settles the rule that where a motion for a directed verdict has been made and improperly denied, and a verdict has been returned, the court, notwithstanding the verdict, may enter a judgment contrary thereto, under the same rule, and for the same reason that the court should have granted the motion for a directed verdict.

█ This calls for a consideration of the law relative to the conditions under which a court may direct the verdict of the jury. In the case last cited it is said: "Appellant's second contention is that the motion for a directed verdict in this case was properly denied, for the reason that the evidence was sufficient to take the case to the jury. The trial court had power to direct the jury to render a verdict in favor of the respondents, unless there was substantial evidence tending to prove all the controverted facts necessary to establish the contestant's case. It was not necessary that there should have been an utter absence of conflict in the evidence. To deprive the court of the right to exercise its power, if there was a conflict, it must have been a substantial one. (*Estate of Sharon, supra,* p. 459; *Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267].)" In *Estate of Sharon,* 179

Cal. 447 [177 Pac. 283], it is said: "It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict. This power exists in favor of the defendant where there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one. There are numerous decisions to this effect. We cite the following: *Estate of Baldwin*, 162 Cal. 473 [123 Pac. 267]; *Sill* v. *Ceschi*, 167 Cal. 704, 706 [140 Pac. 949]; *Estate of Caspar*, 172 Cal. 150 [155 Pac. 631]; *Jacobson* v. *Northwestern etc. Co.*, 175 Cal. 468, 473 [166 Pac. 3]; *Perera* v. *Panama-Pacific International E. Co.*, 179 Cal. 63 [175 Pac. 454]."

The cases cited by counsel for appellant are not in conflict with this rule. In *In re Ross*, 173 Cal. 178 [159 Pac. 603], it is held that, "It is elementary that a motion for a nonsuit is not to be granted where there is any substantial evidence which, with the aid of all legitimate inferences favorable to the plaintiff, would support a verdict or finding that the material allegations of the complaint are true." It was held in the *Estate of Caspar*, 172 Cal. 147 [155 Pac. 631], also cited by appellant, that the right of the court to direct a verdict is, touching the condition of the evidence, absolutely the same as the right of the court to grant a nonsuit. In the latter case it is further held that the court may grant a nonsuit only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given. We have no doubt that in using the expression "disregarding conflicting evidence," the court refers to a substantial conflict, one that would be sufficient to support a verdict.

In the light of the foregoing well-established principles of law, and which are controlling in this case, we will examine the evidence.

September 12, 1922, one A. F. Rousseau, as lessor, and the defendant, as lessee, entered into a written lease of certain real property on Geary Street in San Francisco, for a term of five years commencing December 1, 1922, and ending November 30, 1927. This lease was, on October 5, 1922, assigned to the plaintiff in this action. By its terms the lease provided that the rent for the first year should be $400 per month, with an increase of $25 per month each year thereafter during the term of the lease. The rent to be paid on the first day of each and every month, in advance, during the life of the lease. The lease further provided: "If default be made in the payment of any rent . . . the lessor may re-enter said premises and remove all persons therefrom, and if any rent shall remain unpaid for ten days after the same becomes due, then this lease, at the option of the lessor, may be canceled and terminated." The defendant went into possession under said lease and continued to occupy said premises until dispossessed by virtue of the judgment in this action. It is alleged in the complaint that defendant had failed to pay the rent due under said lease for the months of May, June, July, August, September, and October, 1926, the amount due and unpaid being $3,150, and that the three days' notice to pay or quit had been duly served and payment thereof had not been made.

The answer denies notice of the assignment of the lease to the plaintiff. Denies the forfeiture of the lease. Alleges that the rent was paid to October 1, 1926, and an offer made to pay rent for October, which offer was refused, demand being made for $3,150, the amount claimed to be due. As a special defense it is alleged that on or about the first day of June, 1924, it was agreed that the rentals thereafter should be the sum of $350 per month. As to this last defense the defendant testified: "Some time in June, 1924, I told Mr. Rucker, I could not afford to pay the rental which was at that time, I think, $425 a month. He listened to my story and after all I told him he said: 'Well, what could you afford to pay?' and I told him $350 a month and he said, 'Very well, we will let it go until further notice,' and I have been waiting ever since." On cross-examination she testified: "He asked me how much I could afford to pay and I said $350 a month. Q. What did he say then?

A. And he said very well. . . . Q. That was the final climax? A. Yes. Q. 'I cannot pay more than $350' and he said 'We will see what we can do about it?' A. Yes." Joseph H. Rucker, president of Joseph H. Rucker Company, testified: "I had a conversation in the summer of 1924 with Mrs. Latham at my office. She had been asking regarding a reduction in the rent. . . . Joseph H. Rucker Company, of which I am president, were the agents for Dr. Wayland. Miss Carr had called me on the phone before that, some time in May, and complained about the rent, about business being bad, and I told Miss Carr that I had taken up the matter with the owner of the property, Dr. Wayland, at San Jose, and that she was asking for more than a temporary reduction for two or three months, and I told her the very best he was willing to do was to give her a reduction in her rent for the summer months to get her past the dull season, June, July and August, and during that time he would allow her a rebate of $75 a month for those three months only. I mean June, July and August, 1924. Such a rebate was given."

From June, 1924, to October 2, 1926, the defendant paid $350 per month rent and the letter of October 2, 1926, was the first demand made upon her for the full amount of rent provided by the lease. It further appears in the record that during the months of June, July, and August, 1924, upon the payment of the rent, of $350, the defendant signed a receipt for $75 rebate of the rent for those months, but she disclaims knowledge of the contents of the receipts. It is further in evidence that from the month of September, 1924, the payments of rent were entered on the books of the agent as payments on account, but without the knowledge of defendant. Dr. Wayland, the owner of the premises, testified that he knew of the reduction of the rent for the three summer months of 1924, and told Mr. Rucker he could give such a reduction. He further testified that he accepted $350 each month thereafter for twenty-four months on account, and that he never wrote Mrs. Latham to pay up the balance. Anna Hughes, an employee of the Rucker Company, testified she was present in the office of Rucker Company when the conversation took place between Rucker and the defendant, that Rucker said he had taken the matter up with the owner and the best they could do was

to allow her a rebate of $75 per month for the three summer months, and that she, the witness, heard nothing about a further reduction for an additional period and that she was present during the entire conversation; also, this witness testified, she called the defendant several times on the telephone, in regard to her rent and told her that the rent payment was late, she was only paying on account, to which she replied that she would pay whenever she got the money. September 15, 1925, this witness mailed a letter to defendant in which she said: "As your rent is now considerably increased and as you have paid nothing since the 12th of last month, we are compelled to ask that you give our collector a check for at least $350 tomorrow morning when he calls." The testimony of Harry L. Nelson, a collector for the Rucker Company, was that he presented numerous bills to the defendant during her tenancy and that all bills were marked "Do not give receipt. $350 on account." All receipts presented to her read for $425. "November 19, 1925, she paid me $350. I gave her no receipt. All bills I presented to her she looked at." This witness called on defendant after he had read a copy of the letter of September 15th, testified to by Miss Hughes. Defendant had received a letter from Rucker and she said Rucker could go ahead and do what he wanted. In addition to all this, the defendant, on her cross-examination, stated that in the conversation in which she claims Joseph H. Rucker reduced the rent to $350 per month until further notice, his reply to her request was, "We will see what we can do about it."

From the foregoing *résumé* of the evidence we are satisfied that the verdict of the jury finds no substantial support in the evidence, and as said in the *Estate of Caspar, supra,* "A directed verdict is proper unless there be substantial evidence tending to prove in favor of plaintiff all the controverted facts necessary to establish his case. In other words, a directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence." In *Field* v. *Shorb,* 99 Cal. 661 [34 Pac. 504], it is said: "We are adverse to holding that a finding by a jury or trial court on an issue of fact is not warranted by the evidence, whatever we might think as to its preponderance, where there is presented a fair, reasonable ground for a

difference of opinion, and where a conclusion either way could not be considered as the necessary result of the exercise of an unsound judgment. But where the great current of the evidence is against the verdict, and we cannot escape the conviction that it is wrong, we should not be deterred from setting it aside by the contention that one or two general statements or assertions of one or two witnesses bring the case within the rule which governs in cases where there is a *material* 'conflict of evidence.' "

In the case at bar, as we view the evidence, the verdict of the jury could find support only in the contradictory evidence of the defendant, where on her direct examination she stated that the agent of plaintiff said that the rent would be reduced to $350 per month until further notice, but on cross-examination she testified that this statement was, he would see what could be done. The fact the owner accepted $350 per month for twenty-four months might have raised an inference to support the claimed modification but for the uncontradicted evidence that these were payments on account. This is all the evidence we find in the record to support the alleged modification. Such evidence is too inherently weak to sustain a finding that the lease was modified either by an executed oral agreement or otherwise; especially is this true, when viewed in the light of the overwhelming evidence that the only reduction in rent was a rebate of $75 per month for the three summer months of 1924. We are satisfied that the court's action in entering judgment in favor of the plaintiff, notwithstanding the verdict for defendant, was correct.

It is the claim of respondent that even giving to the evidence offered in behalf of the appellant the dignity of a "substantial conflict," the alleged modification of the lease being oral was void, as falling within the inhibition of the statute of frauds and that the agent of the plaintiff was without authority to modify or change the terms of the lease. These claims are met by the appellant with the assertion that the modification was a reduction of the rent for a period of time until further notice, and plaintiff, having accepted the rent for each month for a period of twenty-four months without notice or demand for the full amount provided in the lease, it became an executed oral agreement for the twenty-four months, and her tender of the amount

provided for in the lease for the month of October, 1926, saved the lease from forfeiture.

Subdivision 5 of section 1624 of the Civil Code provides an agreement for the leasing for a longer period than one year of real property is invalid unless it is in writing, subscribed by the party to be charged or his agent, and unless the authority of the agent is in writing and subscribed by the party to be charged it is also invalid.

Section 1698 of the Civil Code provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise."

*Sinnige* v. *Oswald,* 170 Cal. 55 [148 Pac. 203], is a case of somewhat similar import to the case at bar. In that case there was a written lease for ten years commencing May 1, 1912, the rent reserved being at the rate of $347 per month, payable monthly. The defendant entered into possession of the leased premises and paid the rental reserved for the months of May, June, and July, 1912, and thereafter at the rate of $317 per month to and including April, 1913. Defendants claimed that the lease was changed by a reduction of the rent for the entire term, bringing it down to $317 per month. There was no written modification of the terms, but the smaller amount was accepted from time to time and receipts in full given for the installments paid. The complaint was filed June 11, 1913, for the rent of May, 1913, in the sum of $347, and for a like sum for the June, 1913, rent. The trial court found that there was no change in the term of the lease in the alleged particular of reducing the rent. The supreme court held that concessions of the kind shown, *when supported by a sufficient consideration,* are valid to the extent that a lower rent has been tendered and accepted as satisfaction in full of the installments thus paid. They are not sufficient to establish a change in the written contract so as to affect the amount of future installments of rent where no such change of terms had been in writing. In the case at bar it is clear that unless the reduced payments by defendant were supported by a sufficient consideration to bring the case within that portion of section 1698 of the Civil Code as constituting an executed oral agreement, it was void because not in writing. There is no evidence in the record of a consideration therefor, its nearest approach is the following evidence

given by the defendant: "Q. Did you at any time have a conversation with Mr. Rucker wherein you or he stated or spoke with reference to your moving in the event that the rent was not reduced? A. Yes, sir. Q. When? A. Let me see, I don't know whether it was the first time I saw him or the second. Q. When was that conversation when you made that statement? A. Well, it was the first time I saw Mr. Rucker; that was really our longest conversation. Q. Was that in the summer of 1924? A. Yes sir."

██ But the defendant had already obligated herself to pay the full amount of rent, and her removal from the premises would not have relieved her of that obligation. There was therefore no consideration that would place the agreement within the category of an executed oral agreement, even conceding there was such an agreement. As said in *Dodge* v. *Chapman*, 42 Cal. App. 612 [183 Pac. 966] : "The agreement, then, to receive for a limited time a reduced monthly rental was not in writing, and was supported by no consideration. . . . There was no period of time under the lease, when any installment of rent was due and unpaid, that the terms of the lease could not have been enforced for the full amount." In the case at bar the alleged modification not being in writing, and there being no consideration therefor, the same was void under the provisions of section 1698 of the Civil Code. The alleged modification of the lease was made through Joseph H. Rucker, his authority to make such modification having been questioned, and his authority not being in writing, appellant contends that she was entitled to the benefit of the verdict of the jury upon that question. It was admitted that the Joseph H. Rucker Company, of which said Joseph H. Rucker was president, was the agent of the plaintiff in this transaction. The only testimony appearing in the record as to agency or the agent's authority was that of the plaintiff and Joseph H. Rucker. The former testified that the only authority of his agent was to have general care and supervision over the property, secure tenants, and collect the rents; the latter testified to the same state of facts, both testified that the agent had no power to change the terms of the lease or make any reduction in the rent, therefore there was no disputed fact upon which the jury could pass judgment. However, if we are correct in our con-

clusion that the oral modification claimed by the defendant is unsupported by the evidence and that no consideration passed therefor, the question of agency becomes immaterial.

It is also claimed that said Rucker had a sufficient interest in the property to modify the lease irrespective of any question of agency. This claim rests upon the evidence that said Rucker had an oral agreement with the owner, that upon payment of a certain sum of money the owner would deed to him a one-third interest in the property. A portion of said sum had already been paid. But the agreement rests entirely in parol and the undisputed evidence shows that Rucker had no control or enforceable interest in the property and that no interest of any kind had vested in him. It follows that this contention is unsound.

It is further claimed by appellant that the three days' notice to pay rent or quit was insufficient and the court should have granted defendant's motion for a nonsuit. The notice is signed, "Charles A. Wayland, Owner, by Joseph H. Rucker & Co., Agent, by A. M. Hughes, Cashier." The lease was made between Arthur F. Rousseau, as lessor, and the defendant as lessee and no notice was given the lessee of the transfer of the lease to the plaintiff, nor of his ownership of the property. It is claimed that in the absence of such notice to her, appellant was justified in disregarding the notice given.

In support of this claim appellant cites the case of *O'Connor* v. *Kelly*, 41 Cal. 432, but that was an action of ejectment and not unlawful detainer. In the former action the denial of title constituted the basis of the action and is a fundamental requisite of ejectment, while in the latter the foundation of the action is the failure to pay rent after the notice required by statute. We are of the opinion that the notice given was sufficient. Section 1161 of the Code of Civil Procedure, so far as material to a decision of this question, reads as follows: "A tenant of real property, for a term less than life, is guilty of unlawful detainer: . . . a. When he continues in possession, . . . without the permission of his landlord, or the successor in estate of his landlord, if any there be, after default in the payment of rent, . . . and three days notice, in writing, . . . " It is also provided by section 821 of the Civil Code: "A person to whom any real property is transferred or devised, upon

which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease, or for any waste or cause of forfeiture, as his grantor or devisor might have had.'' It is further provided by section 1111 of the Civil Code: ''Grants of rent or of reversions or of remainders are good and effectual without attornments of the tenants; but no tenant who, before notice of the grant, shall have paid rent to the grantor, must suffer any damage thereby.'' It is apparent from the provisions of the section of the code last cited that the only object of a notice to the lessee is the protection of the tenant who pays rent to his landlord before notice of the grant. No such condition exists here. Further, in the case at bar the notice to quit was signed by the owner through his agent and this agent was known by the defendant to be the agent of the property and to whom she had paid her rent for more than two years previous to the notice to pay rent or quit.

The case of *Plummer* v. *Agoure*, 20 Cal. App. 319 [128 Pac. 1014], is, we believe, in point. In that case the complaint shows that on August 31, 1907, plaintiffs and several other persons owning the tract of land in question, executed to defendant a lease thereof upon certain covenants and reservations of rent contained therein. That thereafter the plaintiffs acquired from their colessors title to the whole property. The defendant made default in the payment of an installment of rent and the plaintiffs, pursuant to the provisions of section 1161 of the Code of Civil Procedure, caused to be served upon defendant a written notice signed by them requiring defendant to pay said installments of rent or surrender possession of the premises. Appellant contends that in the absence of an allegation showing an attornment by defendant as tenant, none but the original lessors named in the lease could give the notice or maintain the action. Upon this claim the following language was used by the court in its opinion: ''Appellant contends that in the absence of an allegation showing an attornment by defendant as tenant, none but the original lessors named in the lease could give the notice or maintain the action. The right to maintain an action by 'the successor in estate of his landlord' is expressly conferred by section 1161 of the Code

of Civil Procedure. Moreover, section 821 of the Civil Code provides: 'A person to whom any real property is transferred or devised, upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease, or for any waste or cause of forfeiture, as his grantor or devisor might have had.' Nor was any attornment of the tenant necessary to enable plaintiffs as vendees of the leased lands to maintain the action. (Civ. Code, sec. 1111; *McDonald* v. *Hanlon*, 79 Cal. 442 [21 Pac. 861].) The case of *Reay* v. *Cotter*, 29 Cal. 168, relied upon by appellant, is not applicable to the existing statute. (*Martel* v. *Meehan*, 63 Cal. 47.) Appellant's contention upon this point is without merit." In the case of *Felton* v. *Millard*, 81 Cal. 540 [22 Pac. 750], it is said: "Appellant objects to the validity of the notice to quit because it was not signed by respondent personally, the signature being 'C. W. Felton, by H. G. Platt, Att'y.' But the notice purported to come from respondent. It was proven at the trial that Platt had authority to sign it; no written authorization was necessary (Civ. Code, sec. 2309); and appellant questioned the authority (if he did question it) at his own risk." We are satisfied that under the foregoing authorities the notice given to the appellant was sufficient. In addition to this, the record shows that the appellant at all times during the ownership of the property by the plaintiff paid the rent to his agent Joseph H. Rucker Company.

One further reason has been advanced by appellant in support of her claim for a reversal of the judgment—that the granting of the motion for judgment deprived her of her constitutional right to trial by jury. We do not understand that appellant attacks the constitutionality of section 629 of the Code of Civil Procedure, but that where a jury has been called, and a motion for judgment, notwithstanding a verdict for the defendant, has been granted, the court in assessing damages and passing on the issues is depriving a party litigant of his right to a jury trial. In a proper case no doubt counsel's contention would be sound. In the instant case, however, as we have pointed out, there is no substantial evidence from which the verdict of the jury in favor of the defendant could find support. The evidence in favor of plaintiff's cause of action is without conflict and

no other or different judgment could have been entered thereon. The trial court did not undertake to assess damages, but entered a judgment for the specific relief prayed for and which, under the contract between the parties, was supported by the uncontradicted evidence.

This disposes of the several points presented for a reversal of the judgment.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 7, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1928.

All the Justices concurred.