[Civ. No. 28254. First Dist., Div. One. May 22, 1972.]

PETER HUNT et al., Plaintiffs and Appellants, v.
TED L. SMYTH, Defendant and Respondent.

## COUNSEL

Herbert J. Friedman, Burd, Hunt & Friedman and John J. Bartko for Plaintiffs and Appellants.

Berlin, O'Grady & Goodman and I. R. Goodman for Defendant and Respondent.

## OPINION

**SIMS, J.**—Plaintiffs, the makers of a promissory note secured by a second deed of trust on property which they purchased from the defendant, have appealed from a judgment which (a) failed to grant them a permanent injunction against a threatened sale under the deed of trust because of their failure to pay principal and interest on the note according to its terms, (b) discharged, subject to a new injunction pendente lite to cover the period of appeal, a preliminary injunction previously granted, (c) adjudged that plaintiffs are obligated to pay defendant according to the terms of the promissory note, no modification or alteration of the note having been made, and (d) awarded defendant attorney's fees and costs. They contend that the court erred (1) in concluding that there had been no novation with respect to the agreement in the note and that plaintiffs were obligated to pay the defendant, as provided in the note, in monthly instalments of $350, rather than $250, from January 1, 1968; (2) in striking a proffered amendment to the complaint and in denying plaintiffs' motion to amend the complaint, all to conform to proof, in order to show that defendant was demanding payments of instalments which allegedly had been waived; (3) in failing to find that the defendant had waived the right to claim that plaintiffs were in default with respect to instalment payments which had not been paid; (4) in awarding defendant attorney's fees; and (5) in failing to award plaintiffs attorney's fees.

It is concluded that there is no error in the judgment of the trial court. The finding that there was no modification or alteration of the terms of payment contained in the note is sustained by the evidence. The court properly found and concluded that plaintiffs were in default in making payments under the note after defendant had given notice that he would not tolerate further delinquencies, that plaintiffs had not relieved the default by their inadequate tenders, and that they were not entitled to enjoin the threatened sale under the deed of trust. The court did not abuse its discretion in striking and refusing to permit plaintiffs' proposed amendments to the complaint because plaintiffs failed to exercise diligence in

ascertaining the facts upon which their new theory to enjoin the sale was predicated, and in presenting such facts to the court, and because the amendments, in any event, failed to set forth an equitable defense to the proposed foreclosure by sale. There was accordingly no error in failing to make findings on the subject matter of the amendments. The court did not err in awarding attorney's fees to defendant, and in denying them to plaintiffs.

Nevertheless, since it is proper to remand the case for the purpose of determining the defendant's attorney's fees on appeal, and because it is in the interests of both parties that the amount necessary to cure the default pursuant to the provisions of section 2924c of the Civil Code be established, the judgment is modified to provide that a further hearing be held to determine, as of the date of such hearing, the amount so necessary, with leave to plaintiffs to pay such amount within 13 days thereafter if they desire to permanently enjoin the sale.

Plaintiffs, husband and wife, purchased approximately 137 acres of undeveloped land improved by a residence in western San Mateo County from defendant in 1960 for $57,500. The terms of the sale consisted of a cash payment to defendant of $27,500 which plaintiffs received from Eureka Savings and Loan Association in return for a deed of trust making it the primary lien holder and which plaintiffs were to pay off at the rate of $347 per month, and a note payable to defendant for $30,000 secured by a second deed of trust. The instalment note, executed on May 25, 1960 provided that plaintiffs promised to pay defendant $30,000 with interest from June 1, 1960 on unpaid principal at the rate of 6 percent per annum, principal and interest payable in monthly instalments of $250 on the first day of each month beginning on July 1, 1960 and continuing until January 1, 1968, at which time the monthly payments were to increase to $350 per month, and continue at that rate until the principal and interest were paid. The note further stipulated that each payment would be credited first on interest then due and the remainder on principal and that should default be made in payment of any instalment when due the whole sum would become immediately due at the option of the holder. Further, it provided that if action was taken on the note, the makers promise to pay attorney's fees fixed by the court.

Between January 1962 and December 1968 a total of 68 $250 payments were made leaving 16 unpaid.[1] Plaintiffs' payments were frequently

---

[1]Defendant so stated in a letter to plaintiffs, and the matter has not been controverted. A collecting bank's payment record which gives a balance of $27,680.55 with interest paid until "4/1/63" [sic April 1, 1962], reflects the following payments

late. All of these payments were accepted by defendant and no protest was made as to their amount. During 1968 defendant would call plaintiff husband approximately every two months asking him to bring the payments up to date and to make them timely. On May 2, 1968, defendant wrote to plaintiff husband requesting three payments that were allegedly due in 1968 and a payment each month thereafter and threatened foreclosure if no affirmative response was forthcoming. The plaintiffs made two payments of $250 each in May following the receipt of that letter, but made no payments in August or November of 1968.

In 1969 no payment was made in January, and $250 was paid February 15. On March 12 plaintiff husband by letter requested defendant to advise plaintiffs at what price he would discount or sell the note. Defendant advised plaintiff husband by telephone that he would not discount the note. He demanded that plaintiffs pay all of the payments due up to that date, and stated he would institute foreclosure proceedings if those payments were not forthcoming. Plaintiffs paid $250 on March 15, thereby reducing the principal balance of the loan to $21,181.95. (Cf. fn. 1 above.) On March 17 plaintiffs by letter offered $15,000 for the note. On March 19 the collecting bank marked its collection account closed. At sometime during this period the defendant had picked up the note from the bank, and then discovered that the note called for monthly payments since January 1, 1968 of $100 more than had been paid. On March 19, 1969 he wrote plaintiffs as follows: "This is to inform you that the Wells Fargo Bank in Belmont is no longer servicing the note in which you are paying. Please make the payments to me at my address in Redwood City. I will not accept less than the full payment of $350.00 each first of every month after you have made the payment of $700.00 no later than the first day of April which will make you current for this year. I am not interested in discounting the note and I am insisting that you pay as agreed from this date forth. . . . P.S. The full amount of your note to date is $21,181.95. The full amount on your first mortgage is $6,781.00."

Plaintiffs sent defendant a check for $250 dated April 10, 1969. On April 11, 1969 defendant caused to be recorded a notice of default for plaintiffs failure to pay principal and interest. A second notice of default was recorded on April 16, 1969 because the defendant was concerned

---

in multiples of $250: 1962-5 (out of presumbly eight remaining), 1963-12, 1964-8, 1965-9, 1966-10, 1967-10 and 1968-10, or assuming the first four payments were made in 1962, 68 payments of $250 in the seven-year period. A compilation of the interest and principal payments and balances as they would have been if payments had been made according to the provisions of the note reveals that the principal balance following the payment due in April 1962 would have been $27,680.53, and would have been $14,681.91 following the payment due in March 1969.

because there was no notarial acknowledgment on the first notice.[1a] Defendant returned the plaintiffs' check on April 12. A similar check for $250 dated May 7, 1969 was returned under date of May 13, and again on June 16, 1969 the defendant returned a check for $250 dated June 13, 1969.

On July 3, 1969 plaintiffs filed their complaint for preliminary injunction and permanent injunction and other relief against defendant and the original and substituted trustee under the second deed of trust. The complaint sets forth the execution and delivery of the note and deed of trust. It alleges that beginning with the payment due January 1, 1968 and with respect to each and every monthly payment of principal and interest thereafter due until April 11, 1969 plaintiffs paid and defendant accepted the sum of $250 per month on account of principal and interest, and that said payments of $250 were made with the intention that the agreement to pay $350 per month beginning January 1, 1968 as provided in the note was to be extinguished and a promise to pay $250 per month was to be substituted therefor. It is further alleged that defendant has recorded a notice of default and is threatening sale of the property, and that plaintiffs have tendered the monthly instalments of $250 and that there was no default. Plaintiffs prayer requested an order that the note be modified to provide for monthly payments of $250 commencing with January 1, 1968, an injunction pendente lite to prevent all proceedings for a sale of the property, and attorney's fees, costs of suit, and "all other proper relief."

The record fails to reveal the disposition of plaintiffs' motion for a preliminary injunction which was originally set for hearing on July 10, 1969. In any event no further proceedings were taken to sell the property under the second deed of trust. A preliminary injunction was granted on September 24, 1969 following the hearing on the merits, and proceedings have been stayed pending this appeal by an injunction pendente lite filed February 27, 1970. Defendant's answer generally denied any modification of the note and sought attorney's fees by way of counterclaim.

The evidence received at the trial and other proceedings taken by the court are discussed below. The court ultimately made findings of fact and conclusions of law reading as follows:

"1. On or about May 25, 1960, Plaintiffs executed a Promissory Note in favor of Defendant . . . . Said Note provided for principal and in-

---

[1a]No issue was tendered or is determined with respect to the necessity of acknowledging a notice of default.

terest to be paid in monthly installments of $250.00 per month, beginning on July 1, 1960, increasing to the sum of $350.00 per month, beginning on January 1, 1968. Said Note was secured by a Deed of Trust.

"2. No agreement was entered into between Plaintiff and Defendant . . . to alter the terms of the Promissory Note.

"3. Plaintiffs failed to pay principal and interest according to the terms of said Promissory Note and are in default according to its terms.

"4. Said Promissory Note provides that if an action be instituted on the Note, Plaintiffs promised to pay such sum as the Court would fix as attorneys fees. Defendant is the prevailing party in these proceedings.

"From the foregoing facts, the Court reached the following:

"1. Plaintiffs are obliged to pay Defendant according to the terms of the Promissory Note executed May 25, 1960;

"2. Plaintiffs are not entitled to a preliminary injunction or a permanent injunction enjoining a Trustee sale;

"3. Defendant is entitled to attorneys fees in the sum of $750.00." Judgment was entered accordingly and this appeal ensued.

## I

The complaint alleged, "Beginning with the payment due January 1, 1968 and with respect to each and every monthly payment of principal and interest thereafter due until April 11, 1969, plaintiffs have paid, and SMYTH has accepted, the sum of $250.00 a month on account of principal and interest. Said payments of $250.00 were made with the intention that the agreement to pay $350.00 per month beginning January 1, 1968, as represented by Exhibit A, be extinguished and the promise to pay $250.00 a month be substituted therefor. . . . [¶] The intention of plaintiffs as hereinabove . . . was communicated to SMYTH, and SMYTH accepted and agreed to be bound by said modification. In accordance with the agreement of the parties to accept said new obligation in lieu of the obligation as represented by Exhibit A, plaintiffs paid and SMYTH accepted the monthly payments of principal and interest in the amount of $250.00 a month from January 1, 1968 until on or about April 11, 1969."

The record shows that plaintiffs had made ten payments of $250 in 1968 and two in 1969 to a collecting bank prior to the defendant's demand of March 19, 1969. The defendant's demand of May 2, 1968 did not men-

tion the amount of the payment demanded, and no objection was made to the fact that thereafter plaintiffs paid only $250 until March 19, 1969.

Plaintiff husband testified that no payments sent to collecting bank were ever rejected or returned and that neither the bank nor the defendant ever notified him that additional sums were due. He stated that the reasons he paid $250 a month on and after January 1, 1968, although the note called for $350, was because taxes had gone up more than $100 per month, the property was nonproductive and was a cash drain, and his economic motivation was simply to cut down on the cash flow. He had a number of telephone conversations with the defendant in 1968, approximately one every two months, when payments were late. Nevertheless he acknowledged, "Mr. Smyth and I did not discuss the issue of how much a month we were paying. We did not have a definitive give and take with reference to the fact I was paying only two fifty and should be paying three fifty. The closest we got to the dollar sum as distinguished from the fact I was late was my expression of annoyance at certain physical realities involving the increase of the taxes in '67 and they had gone up more than one hundred dollars a month; but I did not, in fact, candidly come out and ask Mr. Smyth for his approval to reduce. I kept on paying two fifty and he never objected." Subsequently he testified that he did not believe the defendant could insist on the failure to pay the full $350 as a condition of default because, among other reasons,[2] he had told defendant he was having a hard time financially.

According to plaintiff husband, the first time the amount was questioned was in a phone call from defendant in March 1969, which was followed by the letter of March 19, 1969.

The defendant testified that he never agreed to reduce or change the payments called for by the note; and that he did not discover that plaintiffs were not paying the full amount until he secured the note back from the bank in March 1969. It was then that he advised plaintiffs by telephone and

---

[2] The husband's complete statement reads: "Well, my view of the fifteen month payment history since January 1, 1968 when it went up to three hundred fifty dollars, including multiple telephone conversations and correspondence, none of which had reference to the three hundred fifty dollars a month, the fact that I paid—checks were cashed and the interest was credited currently and it was what I considered to be a pattern of conduct bilaterally, that amended the terms of the written obligation. I relied to my detriment upon the receipt of those and I say I relied to my detriment because we were dealing in the context of no in personam obligation. There was a purchase money deed of trust strictly and so I continued to make two hundred fifty dollars a month payments and they continued to be accepted for fifteen months and I told Mr. Smyth I was having a hard time financially and the magnitude of our telephone conversations in this time period were such as to lead me to the conclusion that we had a two hundred fifty dollars a month deal prospectively as well as retrospectively."

by letter that he expected the full $350 payments. In a deposition defendant stated, "As long as he was trying to make his payments, I am willing to accept partial payment. I was trying my best to get along and take the money as it came in." At the trial defendant testified that in making the foregoing statement, "I had in mind that some of these days he would catch the payments up, but in the meantime I would accept what he could give and unless it got so bad I had to foreclose, which it got so bad I had to foreclose." The defendant never discussed the foregoing views with Hunt or otherwise communicated them to him.

The evidence does not establish a novation as a matter of law, nor does it otherwise establish an agreement modifying the terms of the original promissory note. Plaintiffs have confused conduct which may serve to prevent an obligee from exercising rights which might otherwise rise upon a default by the obligor, which is discussed below (see part II, *infra*), and a consensual agreement to modify an existing contract.

"Novation is the substitution of a new obligation for an existing one." (Civ. Code, § 1530.) "Novation is made: 1. By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation; . . ." (§ 1531.) "Novation is made by contract, and is subject to all the rules concerning contracts in general." (§ 1532.)

The burden of proof is on the party asserting that a novation has been consummated. (*Goodman* v. *Citizens Life & Cas. Ins. Co.* (1967) 253 Cal.App.2d 807, 816 [61 Cal.Rptr. 682]; *Ehrenreich* v. *Shelton* (1963) 213 Cal.App.2d 376, 378 [28 Cal.Rptr. 855]; *San Gabriel Val. Ready-Mixt* v. *Casillas* (1956) 142 Cal.App.2d 137, 139 [298 P.2d 76]; and *Ayoob* v. *Ayoob* (1946) 74 Cal.App.2d 236, 250 [168 P.2d 462].) "The intention of the parties to extinguish the prior obligation and to substitute a new agreement in its place must clearly appear. [Citations.]" (*Goodman* v. *Citizens Life & Cas. Ins. Co., supra,* 253 Cal.App.2d 807, 816. See also *Eluschuk* v. *Chemical Engineers Termite Control, Inc.* (1966) 246 Cal.App.2d 463, 468 [54 Cal.Rptr. 711]; *Ayoob* v. *Ayoob, supra,* 74 Cal.App.2d 236, 250.) Nevertheless it is not necessary to meet and state either in writng or orally that the original contract was rescinded. "If the intent to abandon can be ascertained from the acts and conduct of the parties the same result will be attained. Abandonment may be implied from surrounding facts and circumstances. [Citations.]" (*Tucker* v. *Schumacher* (1949) 90 Cal.App.2d 71, 75 [202 P.2d 327]. See also *Producers Fruits Co.* v. *Goddard* (1925) 75 Cal.App. 737, 755-756 [243 P. 686].)

The plaintiffs do not claim that they accompanied the lesser sums

with any request for a modification of the agreement, or that the defendant ever indicated that he was going to forego his right to collect the obligation due him according to its terms. It may be assumed that the knowledge of the bank, which held the note, that each payment on and after January 1, 1968 was $100 less than that called for by the note, can be attributed to the defendant even though he was not actually conscious of that discrepancy. (See Civ. Code, § 2332; *Continental Bldg. etc. Assoc.* v. *Boggess* (1910) 158 Cal. 469, 472 [111 P. 357]; and *Fickbohm* v. *Knaust* (1930) 103 Cal. App. 443, 446-447 [284 P. 692].) ▮ Nevertheless in the absence of some agreement the mere acceptance of partial payments of what is due on an obligation does not discharge the balance, or modify the terms of its payment. There must be some consideration flowing from the obligor, either a benefit to the obligee or a detriment to the obligor for which the obligee bargained, before a modification or novation can be found. (See *San Gabriel Val. Ready-Mixt* v. *Casillas, supra,* 142 Cal.App.2d 137, 140; *Harbor Construction Co.* v. *Walters* (1929) 101 Cal.App. 470, 476-478 [281 P. 1062]; and *McClintick* v. *Frame* (1929) 98 Cal.App. 338, 343-344 [276 P. 1033].) ▮ The evidence is insufficient to establish a novation, much less to establish a novation as a matter of law. (See *Goodman* v. *Citizens Life & Cas. Ins. Co., supra,* 253 Cal.App.2d 807, 816; *Eluschuk* v. *Chemical Engineers Termite Control, Inc., supra,* 246 Cal.App.2d 463, 468; *Ayoob* v. *Ayoob, supra,* 74 Cal.App.2d 236, 250; *Battaglia* v. *Winchester Dried Fruit Co.* (1939) 32 Cal.App.2d 436, 438 [90 P.2d 111]; *Harbor Construction Co.* v. *Walters, supra,* 101 Cal.App. 470, 477; *McClintick* v. *Frame, supra,* 98 Cal.App. 338, 344; and *Bledsoe* v. *Pacific Ready Cut Homes, Inc.* (1928) 92 Cal.App. 641, 644-645 [268 P. 697]. Cf. *San Gabriel Val. Ready-Mixt* v. *Casillas, supra,* 142 Cal.App.2d 137, 140-141; *Tucker* v. *Schumacher, supra,* 90 Cal.App.2d 71, 75; and *Producers Fruit Co.* v. *Goddard, supra,* 75 Cal.App. 737, 754.)

Section 1698 of the Civil Code provides, "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." The effect of this section is reviewed in *D. L. Godbey & Sons Const. Co.* v. *Deane* (1952) 39 Cal.2d 429 [246 P.2d 946], where the opinion states: "Section 1698 has a dual operation. On the one hand it invalidates oral contracts of modification that are unexecuted, and on the other hand, it validates executed agreements that might otherwise fail for lack of consideration. [Citation.] Typical of the latter category are agreements to accept less than is due under the terms of a written contract [citations], or to accept performance at a later date than that provided in the writing. [Citations.] Since in such cases the modification agreement requires no additional act or forbearance on the part of the obligor, it can only be executed to the extent that the obligee accepts

performance in accordance with its terms. Accordingly, in the absence of a valid waiver of a condition [citations], or facts establishing an estoppel to rely upon section 1698 [citations], the section may only be satisfied by execution on the part of the obligee by accepting less than his due. [Citations.]" (39 Cal.2d at p. 432.)

An examination of the cases cited for the proposition that executed agreements to accept less than is due under the terms of a written contract is of little solace to plaintiffs. ■ It is true that where periodic payments are due under a lease or a settlement agreement and a lesser sum than that provided in the written agreement is tendered and received in full satisfaction of the agreement, the obligee cannot subsequently collect the difference. (See *Julian* v. *Gold* (1931) 214 Cal. 74, 76-79 [3 P.2d 1009]; and *Taylor* v. *Taylor* (1940) 39 Cal.App.2d 518, 521-522 [103 P.2d 575]. Note also *Eluschuk* v. *Chemical Engineers Termite Control, Inc., supra,* 246 Cal.App.2d 463, 469-471.) In the absence of a new consideration or a writing which modifies the contract, the mere forgiveness of a portion of past instalments will not effect an agreement to reduce future instalments. (See *Stoltenberg* v. *Harveston* (1934) 1 Cal.2d 264, 266-267 [34 P.2d 472]; *Sinnige* v. *Oswald* (1915) 170 Cal. 55, 57 [148 P. 203]; and *Taylor* v. *Taylor, supra,* 39 Cal.App.2d 518, 522.)

■ From the foregoing authorities it is clear that the plaintiffs cannot predicate a modification of the agreement for future payments on the payment and acceptance of lesser sums in the past. Moreover, in the absence of agreement, or any expression of intent to accept the $250 payment in satisfaction of a $350 payment, rather than merely crediting it on the account, there was no forgiveness of the delinquency. In *Wayland* v. *Latham* (1928) 89 Cal.App. 55 [264 P. 766] [disapproved in *Julian* v. *Gold, supra,* 214 Cal. at p. 76, insofar as it suggests that an executed agreement to accept a lesser rent must be supported by consideration] the court stated, "The fact the owner accepted $350 per month for twenty-four months might have raised an inference to support the claimed modification but for the uncontradicted evidence that these were payments on account. This is all the evidence we find in the record to support the alleged modification. Such evidence is too inherently weak to sustain a finding that the lease was modified either by an executed oral agreement or otherwise; especially is this true, when viewed in the light of the overwhelming evidence that the only reduction in rent was a rebate of $75 per month for the three summer months of 1924. We are satisfied that the court's action in entering judgment in favor of the plaintiff, notwithstanding the verdict for defendant, was correct." (89 Cal.App. at p. 63.) Here the payments were credited to accrued interest and then to principal as required by the terms of the note and the applicable law.

(Civ. Code, § 1479.) The plaintiffs' conduct in failing to pay the instalments as called for by the note in no way discharged the indebtedness. The sole effect of the failure to pay the full amount, if not corrected by the time of the normal maturity of the note, would be to extend the time of maturity without the consent of the obligee, and force him to lend his money on terms to which he did not consent. An oral agreement for the extension of time of a future maturity cannot be considered as executed, and will not be enforced when not supported by consideration. (See *D. L. Godbey & Sons Const. Co.* v. *Deane, supra,* 39 Cal.2d 429, 433; *Harloe* v. *Lambie* (1901) 132 Cal. 133, 136 [64 P. 88]; *Henehan* v. *Hart* (1900) 127 Cal. 656, 658 [60 P. 426]; *Stafford* v. *Clinard* (1948) 87 Cal.App.2d 480, 481 [197 P.2d 84]; and *Middlecamp* v. *Zumwalt* (1929) 100 Cal.App. 715, 721-723 [280 P. 1003].) It is obvious therefore that no agreement to waive $100 of each payment and extend the maturity of the note can be implied from the circumstances alone. (See *Goodman* v. *Citizens Life & Cas. Ins. Co., supra,* 253 Cal.App.2d 807, 817-818; *Gregers* v. *Petersen Ice Cream Co., Inc.* (1958) 158 Cal.App.2d 746, 752-754 [323 P.2d 572]; and *National Dollar Stores* v. *Wagnon* (1950) 97 Cal.App.2d 915, 919-922 [219 P.2d 49].)

In *Julian* v. *Gold, supra,* the court gave the following as an alternative ground of decision: "We therefore conclude that in so far as said lease contract has been fully executed, the plaintiffs have lost their right to recover the sums allowed as rebates on the several installments of rent. We reach this same conclusion upon a well-known rule of waiver set up by section 2076 of the Code of Civil Procedure, which reads as follows: 'The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards.'

"Under this section, if the lessor was unwilling to accept the amount tendered as in full, he could have protested then, but his acceptance, as in full payment, of a lesser sum than that due, brings him within the rule of estoppel declared by the above section. [Citation.]" (214 Cal. at pp. 79-80. See also Civ. Code, § 1501.) Plaintiffs appear to urge that because the defendant did not object to each and every payment which was inadequate under the terms of the note, he has assented to a modification of the terms of the note. In the first place, there is no evidence to show that plaintiffs ever communicated to the bank or to the defendant that they intended the $250 payments to stand in lieu of the $350 payments.

In short, the payments as forwarded to the collecting agent did not purport to be any more than payments on acount. In *Heimstadt* v. *Tapered Parts, Inc.* (1957) 155 Cal.App.2d 711 [318 P.2d 689], the court pointed out, "Defendant cannot escape from the inadequacy of its tender by asserting that plaintiff did not point out the particulars in which it was deemed inadequate. Plaintiff had made his demand. There was no uncertainty as to the amount he was claiming." (155 Cal.App.2d at p. 715. See also *Thomassen* v. *Carr* (1967) 250 Cal.App.2d 341, 349-350 [58 Cal.Rptr. 297]; and *Bisno* v. *Sax* (1959) 175 Cal.App.2d 714, 720 [346 P.2d 814]; and cf. *Dunlap* v. *Bellah* (1960) 184 Cal.App.2d 574, 586 [7 Cal.Rptr. 766].) No agreement can be predicated upon the defendant's failure to object to the inadequate payments prior to March 1969.

· The finding of the court reading "No agreement was entered into between Plaintiff and Defendant . . . to alter the terms of the Promissory Note," the conclusion reading, "Plaintiffs are obligated to pay Defendant . . . according to the terms of the Promissory Note executed May 25, 1960," and the terms of the judgment so providing are all sustained by the evidence.

## II

■ It is established that when a creditor has accepted deferred payments with notice, express or implied of such default, he can only reinstate the provisions of the contract requiring prompt payment by giving the debtor notice to that effect. (See *Boone* v. *Templeman* (1910) 158 Cal. 290, 294-297 [110 P. 947]; *Trinity County Bank* v. *Haas* (1907) 151 Cal. 553, 556 [91 P. 385]; *Crossmore* v. *Page* (1887) 73 Cal. 213, 215 [14 P. 787]; *Lopez* v. *Bell* (1962) 207 Cal.App.2d 394, 398-399 [24 Cal.Rptr. 626]; *Bisno* v. *Sax, supra,* 175 Cal.App.2d 714, 724; *Miller* v. *Modern Motor Co.* (1930) 107 Cal.App. 38, 42-44 [290 P. 122]; *Fickbohm* v. *Knaust, supra,* 103 Cal.App. 443, 447; *Middlecamp* v. *Zumwalt, supra,* 100 Cal.App. 715, 721; *Bledsoe* v. *Pacific Ready Cut Homes, Inc., supra,* 92 Cal.App. 641, 645; and *Altman* v. *McCollum* (1951) 107 Cal.App.2d Supp. 847, 857-858 [236 P.2d 914].)

■ By his written demand of March 19, 1969 the defendant advised the plaintiffs that he was insisting that they pay the sum of $350 for the remaining one of the three instalments which had fallen due in 1969, and a similar sum on April 1, 1969 and thereafter. As the court noted in its memorandum decision (see *Kerr Land & Timber Co.* v. *Emmerson* (1965) 233 Cal.App.2d 200, 218 [43 Cal.Rptr. 333]; and *Ehrenreich* v. *Shelton, supra,* 213 Cal.App.2d 376, 378-379), any waiver of strict compliance with the terms of the note was terminated by that letter. Plaintiffs not

only failed to pay up the one instalment which had become delinquent in the preceding three months, but also failed to tender or pay the sum' of $350 which became due on April 1, 1969. For the reasons set forth above (part II) the tenders of $250 on April 11, May 7 and June 13 were insufficient to relieve the plaintiffs from default.

The case is similar to *Bledsoe* v. *Pacific Ready Cut Homes, Inc., supra.* There the debtor insisted that the payment of an instalment had been wholly waived, as here the plaintiffs claimed that the right to collect the increased sum of each instalment had been waived. The court there stated: "To avoid being charged with a waiver, the defendant was bound to give notice before proceeding to foreclose. As the defendant did not collect the $500 payable November 1, 1924, it was bound to make a formal demand therefor. It was bound to stay its hand a reasonable length of time so that plaintiff could comply with the terms of the contract. But it was not bound to admit as a fact things which it contended had never taken place. . . . The record shows that the defendant never at any time sought to create a default because of any mere delays in making payments. But it did seek to recover payments expressly designated in the contract. Before starting to foreclose it gave numerous notices and made numerous demands. All notices and demands were ignored by the plaintiff and, furthermore, through her agent on January 7, 1925, she wrote a letter in which she flatly disclaimed any liability to pay $500 every six months, claiming that such payments had been wholly waived. In this legal conclusion she was mistaken. There was no evidence of a permanent waiver. In so far as the language of the findings may be construed as holding that there had been a permanent waiver, the findings are wholly unsupported by the evidence." (92 Cal.App. at p. 645. See also *Bisno* v. *Sax, supra,* 175 Cal.App.2d 714, 720.)

The corrected notice of default was properly filed on April 16, 1969. It was sufficient in form. (See *Engelbertson* v. *Loan & Bldg. Assn.* (1936) 6 Cal.2d 477, 478-479 [58 P.2d 647]; and *Birkhofer* v. *Krumm* (1938) 27 Cal.App.2d 513, 523-524 [81 P.2d 609].) Plaintiffs at no time paid or offered to pay the sum accrued under the note in order to relieve the default. The court properly found as follows: "Plaintiffs failed to pay principal and interest according to the terms of said Promissory Note and are in default according to its terms." It properly concluded, "Plaintiffs are not entitled to a preliminary injunction or a permanent injunction enjoining a Trustee sale," and adjudged, "That the preliminary injunction granted herein on September 24, 1969, is hereby discharged and shall henceforth have no force and effect."

## III

When the case came on for hearing September 19, 1969, counsel for each side agreed that the case involved a dispute as to whether the monthly payments had been reduced by agreement. Plaintiffs' counsel also stated, "Well, incident to that question is: What was the basis of the alleged default which resulted in notice of default; and if there was sufficient disagreement or invalidity to the asserted ground of default. The notice of default and foreclosure proceeding based thereon are invalid and things ought to be simply reinstated without cause and what have you. There are two questions internally connected."

In the course of plaintiffs' examination of the defendant as an adverse witness and at the suggestion of defendant's attorney, a letter written by that attorney to plaintiffs' attorney on July 15, 1969, after the action had been filed, was received in evidence. This letter stated in part: ". . . there were a total of 68 two hundred fifty dollar payments made to and including December 31, 1968. However, for this seven year period, a total of seven times twelve or 84 payments should have been made, leaving 16 payments unpaid. In 1969, seven payments should have been made as of this date and only two have been credited. [¶] This makes a total of twenty-one monthly payments at $250.00 each, making a total arrearage of $5,250.00. In addition, Mr. Smyth claims an additional $100.00 per month accrued since January 1, 1968 for a total of nineteen months or $1,900.00 additional." (See fn. 1 above.)[3] Counsel for the defendant attempted to limit the use of the letter to the issue of whether there was an agreement to reduce the payments on the note from $350 to $250. The court agreed that such was the issue presented by the complaint. Nevertheless it overruled the defendant's objection, and the defendant testified that when he filed the notice of default he considered the plaintiffs in default for all of the

[3]The letter dated July 15, 1969 was written in response to a demand for a written statement of the overdue instalments and other data purportedly made under the then existing provisions of section 2943 of the Civil Code. (See Stats. 1968, ch. 966, § 1, p. 1852.) The section provides and provided in pertinent part, "A beneficiary, or his authorized agent, shall, on the written demand of an entitled person, or his authorized agent, made at any time before, or within two months after, the recording of a notice of default under a mortgage or deed of trust, if the power of sale therein is to be exercised, or otherwise made more than 30 days prior to entry of the decree of foreclosure, prepare and deliver to the person demanding it a written statement showing: . . . [¶] This section applies only to mortgages and deeds of trust executed on or after January 1, 1964."

In his letter of July 15, defendant's attorney pointed out that the statute did not apply because of the foregoing provisions. The demand was made more than two months after April 16, 1969, and the deed of trust was executed in May 1960. The letter also stated, "We will be perfectly happy to litigate the issue of the additional $100.00 per month, but we insist that $5,250.00 be paid immediately so that the disputed issue can be isolated."

payments they had not made since 1962. (See fn. 1 above, and accompanying text.)

A second new development was the revelation that a second notice of default was recorded April 16 for reasons referred to above.

At the conclusion of the taking of testimony the significance of the later notice was debated. It was urged that the lawsuit was limited to the question of whether $350 or $250 was payable under the note,[4] and defendant's attorney objected that the issue of validity of the notice of default could not be raised at the trial when not brought out in the pleadings. At the suggestion of the court that the plaintiffs amend the complaint to conform to proof in order to attack the validity of the April 11, 1969 notice of default, the plaintiffs did so move, and the motion was granted. The defendant persisted in his objection to the introduction of that issue into the case. After discussing attorneys' fees and the necessity for a bond for a preliminary injunction, the attorneys and the court returned their attention to the merits of the case. The court called for briefs on the issue of the amount of the payments, and second the adequacy of the second notice of default. It was then that counsel for plaintiffs stated, "Besides the issue of waiver of the three hundred dollars [sic] a month payment, although not specifically pleaded because we did not know this issue was going to be claimed until after we got into the law suit, there is in this case and as part of a declaratory relief issue, Your Honor, the question of whether or not Mr. Smyth has the right to demand, as I believe he said on the stand, as a condition of default all 'alleged missed back payments since May 25, 1960.' " The court opined, ". . . I think it comes under the general question of whether or not there was a waiver," and counsel for defendant observed, "Under that issue, certainly. No question. This is the main issue in the case."

Five days after the hearing, the defendant's attorney secured an order shortening time, and thereafter served and filed a notice of motion to reopen the trial proceedings and his declaration in support of the motion. As a result of this motion it was found and ordered, pursuant to stipulation, ". . . that the Transamerica Title Company as Trustee under the terms of the Deed of Trust which is the subject of these proceedings, proceeded as required by law in all respects on April 16, 1969, recording the proper notice of default and within ten (10) days thereafter mailing copies of the notice to Plaintiff and that the recording of the notice of default on April 11, 1969, was defective; that the three (3) month period for purposes of

---

[4]Although the remarks are attributed to the attorney 'for plaintiffs in the record, it is apparent from the discussion and their content that they must have been uttered by defendant's attorney.

Civil Code Section 2924 and Civil Code Section 2924c expired on July 16, 1969."

On September 29, 1969 the plaintiffs filed an amendment to their complaint in which they alleged that the notice of default recorded on April 11, 1969 was not acknowledged, that a new notice of default was recorded April 16, 1969, that on July 11, 1969 prior to the expiration of three months from the date of the latter notice a demand was made for the amount necessary to reinstate the obligation, and that the demand embodied in the letter of July 15, 1969 was unwarranted, unjustified and illegal as a matter of law because the defendant had waived his right to cumulate the unpaid instalments, and because there was only $250 and not $350 due per month.

On the receipt of plaintiffs' amendment, defendant moved to strike it on the grounds that it embraced issues beyond those raised at the trial and permitted by the court's order at the trial. Plaintiffs filed a declaration in opposition to defendant's motion. The court granted the defendant's motion and struck the plaintiffs' amendment, and ordered that the complaint be amended by substituting April 16, 1969 for April 11, 1969 as the date when the notice of default was recorded.[5]

Plaintiffs thereupon moved for leave to amend the complaint in accordance with the amendments which had been stricken. This motion was argued and submitted, and was denied when the court made its announcement of intended decision and memorandum of decision.

The plaintiffs requested findings of fact and conclusions of law. The court rejected detailed findings submitted by plaintiffs, which again raised the issues set forth in the rejected amendments, and ultimately adopted the findings of fact and conclusions of law referred to above.

From the foregoing it appears that the court did not originally contemplate that the amendment to the complaint which it permitted at the trial would embrace the plaintiffs' contention that the defendant had made an excessive demand for past due instalments as a condition for relief from default. The amendment insofar as it exceeded the leave granted by the court was properly stricken. (See *Estate of Walters* (1949) 89 Cal.App.2d 797, 799-800 [202 P.2d 89]; and *Gilbert* v. *Sherrod* (1925) 75 Cal.App. 437, 438-439 [243 P. 30]. Cf. Code Civ. Proc., § 472.) The error, if any, lies in the denial of plaintiffs' motion to amend.

---

[5]Plaintiffs' contention in their closing brief that the trial court erred in striking the amendment to conform to proof which changed the relevant "foreclosure" date from April 11, 1969 to April 16, 1969 is not borne out by the record. The amendment was recognized to that extent.

In *Landis* v. *Superior Court* (1965) 232 Cal.App.2d 548 [42 Cal.Rptr. 893] the court granted a writ of mandate directing the trial court to grant leave to file an amended complaint for reformation of written instrument when the original complaint had been for breach of an alleged oral agreement. The court noted, "Code of Civil Procedure section 473 authorizes the court in its discretion to allow amendments to pleadings." (232 Cal. App.2d at p. 554.) It collated the applicable principles as follows: ". . . courts should indulge in great liberality in permitting amendment so that no litigant shall be deprived of his day in court because of technicalities; that the right to amend should be denied if a change is made in the liability sought to be enforced or it appears to a certainty that no basic right exists or no relief can possibly be granted; that if the facts shown in the complaint indicate that a plaintiff is entitled to damages of some sort, it is not a fatal error that his original pleading is based on an incorrect theory and amendment should be permitted.

"The cases reflect that denial of amendments of pleadings have been upheld in the past on two possible bases: the subject matter of the proposed pleading, or the conduct of the parties. If the subject matter raises a disfavored plea, is insufficient to state a cause of action or defense, contradicts an admission in the original pleading without a showing of mistake or excuse, or changes the cause of action, denial is upheld. (See 2 Witkin, Cal. Procedure (1954) pp. 1607-1608.) If the conduct of the party shows long unexplained and unexcused delay, and particularly where it is indicative of bad faith or the delay would necessitate continuance, denial has been upheld. (See cases cited in Witkin, pp. 1608-1609.) However, reversals on appeal are common where the court denies leave to amend and the appellant makes a reasonable showing of prejudice from the ruling. (P. 1606.)" (*Id.,* pp. 554-555. See also Code Civ. Proc., §§ 469 and 470.)

In this case the general subject matter of the action was the defendant's right to sell the property to satisfy the obligation represented by the note and secured by the deed of trust. It is urged that the question of whether the defendant had waived the right to collect unpaid instalments regardless of amount, as alleged in the amendment, was related to and all part of the same transaction as the question of whether the defendant, as alleged in the complaint, had waived the right to collect the $100 by which the instalments increased commencing January 1, 1968; that both questions related to plaintiffs' cause of action that there was no default which would warrant a sale of the security; and that defendant would not have been prejudiced by the amendment which embraced facts which had been brought out at the trial. (See *Commeford* v. *Baker* (1954) 127 Cal.App.2d 111, 116 [273 P.2d 321]; *Wade* v. *Markwell & Co.* (1953) 118 Cal.App.2d 410,

416 [258 P.2d 497; 37 A.L.R.2d 1363]; *Genger* v. *Albers* (1949) 90 Cal.App.2d 52, 55-56 [202 P.2d 569]; *Reynolds* v. *Mead* (1944) 62 Cal.App.2d 179, 180-181 [144 P.2d 424]; and *Price* v. *Mason-McDuffie Co.* (1942) 50 Cal.App.2d 320, 325-326 [122 P.2d 971].)

In *Commeford* v. *Baker, supra,* the court pointed out, "The courts render judgment on the basis of the law as applied to the established facts, and if these warrant a judgment for the plaintiff, relief may not justly be denied for the sole reason that the case was made under an erroneous theory." (127 Cal.App.2d at p. 116.) In *Wade* v. *Markwell & Co., supra,* the court upheld an amendment at trial to show that plaintiff had made a proper tender to redeem a pledge (118 Cal.App.2d at pp. 417-418). In *Genger* v. *Albers, supra,* an amendment after trial to change the cause of action from claim and delivery to conversion was approved. The court pointed out that the plaintiff had no knowledge that the defendant had disposed of the property until the trial of the case (90 Cal.App.2d at p. 56). In *Reynolds* v. *Mead, supra,* the court upheld an amendment of an answer to show a novation because it was "necessary to prevent a failure of justice." (62 Cal.App.2d at p. 180.)

On the other hand numerous precedents exist for upholding the trial court's refusal to permit an amendment. ■ "The policy of great liberality in permitting amendments at any time under section 473 is well established, but when an order granting or denying leave to amend is attacked on appeal an additional policy applies: the reviewing court will uphold the trial court's action unless an abuse of discretion is clearly shown. [Citations.]" (*People* ex rel. *Dept. Pub. Wks.* v. *Jarvis* (1969) 274 Cal.App. 2d 217, 222 [79 Cal.Rptr. 175]. See also *Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 215-216 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *Barcelon* v. *Cortese* (1968) 263 Cal.App.2d 517, 528 [69 Cal.Rptr. 657]; and *Hayutin* v. *Weintraub* (1962) 207 Cal.App.2d 497, 505-506 [24 Cal.Rptr. 761].) In *People* ex rel. *Dept. Pub. Wks.* v. *Jarvis, supra,* the court, in upholding a denial of leave to amend made 16 months after the complaint had been filed and after a pretrial conference, noted: "The trial court is entitled to be 'skeptical of late claims' (*Plummer* v. *Superior Court, supra,* [(1963) 212 Cal.App.2d 841 (28 Cal.Rptr. 294)] at p. 844); and long-deferred presentation of a proposed amendment, without a showing of excuse for the delay, is a significant factor in support of the trial court's discretionary denial of leave to amend. [Citation.]" (274 Cal.App.2d at p. 222. See also *Waxman* v. *Superior Court* (1966) 246 Cal.App.2d 668, 670-673 [54 Cal.Rptr. 924]; *Hayutin* v. *Weintraub, supra,* 207 Cal.App.2d 497, 506; and *Roberts* v. *Karr* (1960) 178 Cal.App.2d 535, 547 [3 Cal.Rptr. 98].) In *Brautigam* v. *Brooks* (1964) 227 Cal.App.2d 547 [38 Cal.Rptr. 784],

the court quoted with approval from 71 Corpus Juris Secondum, Pleading, section 285, pages 613-614, as follows: " 'A commonly recognized limitation on the propriety of amendments to conform to the proof is that they must not introduce a new cause of action or introduce a new issue, or substantially change the claim or defense, . . .' " (227 Cal.App.2d at p. 561. See also *Barcelon* v. *Cortese, supra,* 263 Cal.App.2d 517, 528.)

■ It may further be noted that the fact that a proposed amendment does not state an entirely new cause of action does not impose upon the court the duty of permitting its filing. "The authorities nowhere establish a rule to the effect that plaintiff may at any time file any amendment he desires so long as it does not state an entirely new cause of action. In most instances, as here, the problem of an absolute bar to amendment is not involved and the judge is required to determine in the exercise of a sound judicial discretion whether the proffered amendment should be received. That discretion is a broad one and its exercise will be upheld unless there plainly has been an abuse of it." (*Hayutin* v. *Weintraub, supra,* 207 Cal.App.2d at p. 507.) Moreover a motion to amend to conform to proof cannot be predicated on evidence to which an objection has properly been made. (See *Brautigam* v. *Brooks, supra,* 227 Cal.App.2d 547, 561.)

■ The trial court did not abuse its discretion in denying the plaintiffs' leave to amend. It was not until the trial that they attempted to assert a new theory for relief. It is true that they did not discover the full tenor of the extent of the amount demanded by defendant to relieve them from default and foreclosure until after they filed their action. This delay was not occasioned by defendant, but by their own failure to offer to do equity and to determine, as they should have known themselves, what payments were delinquent. They adamantly and erroneously insisted on their right to consider the payment of all delinquencies, rather than the delinquencies themselves waived. It may be noted that even under the provisions of inapplicable section 2943 (see fn. 3 above), the obligor must demand the sum due within two months after the recording of the notice of default. The plaintiffs waited three. They then delayed from July to the trial in September before attempting to assert their objections to the defendant's demand. This is not a case where the obligor was diligently seeking to ascertain what he owed so that he could do equity and be relieved of the effects of his default. The obligors were seeking to avoid their just accrued and payable obligations under the terms of the note. Although the matters raised by the proposed amendment encompassed the same relief sought by the original complaint, the court was warranted in rejecting the new theory because of the plaintiffs' delays in ascertaining the facts upon which it was predicated, and in presenting it to the court.

■ Moreover, as stated in *Brautigam* v. *Brooks, supra,* "The granting

of leave to amend to conform to proof is manifestly erroneous when the record shows, as here, that no conformity results due to the absence of the claimed evidence." (227 Cal.App.2d at p. 560. See also *Goren* v. *Griffin* (1957) 152 Cal.App.2d 35, 47-48 [312 P.2d 743].) ■ It is concluded, as set forth below, that the facts upon which plaintiffs rely in their proposed amendment do not entitle them to any relief. There was, therefore, no error in striking the amendment which exceeded the permission granted by the court, or in denying the subsequent motion to amend. There was, therefore, no error in failing to find on the issues tendered by the amendments.

## IV

■ "Equity having taken jurisdiction over a cause does complete justice, even to the extent of exceeding the specific prayers of the complaint when necessary. *Petersen* v. *Ridenour,* 135 Cal.App.2d 720, 727 . . .: 'It is fundamental that equity, having taken jurisdiction, will grant complete relief. This is especially true in a declaratory judgment action. "If a controversy exists as in this proceeding and a complaining party is entitled to some relief a trial court may not refuse to declare the rights of the parties concerning the controversy. [Citation.] The purpose of the action is to set at rest or at least quiet, until the occurrence of further events, the rights and relations of the parties. [Citations.]" ' '[T]he absence of a prayer is not fatal, the court being charged under section 580, Code of Civil Procedure with the duty in a contested case of granting any relief consistent with the case made by the complaint and embraced within the issue.' (See also *Selby* v. *Battley,* 149 Cal.App.2d 659, 664-665. . . .)" (*Bisno* v. *Sax, supra,* 175 Cal.App.2d at p. 729.) ■ This court, therefore, has examined the contentions raised by the plaintiffs in their proposed amendments, and the evidence bearing thereon.

Plaintiffs have again muddied the waters by failing to distinguish between the waiver of a right to rely on an obligor's default as a ground for accelerating the maturity of an instalment obligation, and the right of an obligee to insist on payment of that portion of the obligation which is due, owing and payable.

■ Where, as here, there has been a default under which the obligee may elect and has elected to declare the whole obligation due and to enforce his security (see parts I and III above), he may insist that the obligor make his payments current as a condition of reinstatement of the instalment features of the obligation. Civil Code section 2924c requires

no less.[6] An examination of the cases in which relief has been granted (see part II above) indicates that in each case the obligor either tendered or paid all sums that had accrued under the original terms of the obligation. (See e.g., *Tomczak* v. *Ortega* (1966) 240 Cal.App.2d 902, 905-906 [50 Cal.Rptr. 20]; *Bisno* v. *Sax, supra,* 175 Cal.App.2d 714, 720-721; and *Magnus* v. *Morrison* (1949) 93 Cal.App.2d 1, 2-3 [208 P.2d 407].) It may be noted that there is some authority for the proposition that in relieving an obligor from his default, the acceleration of maturity for default in the payment of a debt should be distinguished from a forfeiture under a contract for the purchase of property because there is no true forfeiture, merely enforcement of the obligation according to its terms. (*Messner* v. *Mallory* (1951) 107 Cal.App.2d 377, 379-380 [236 P.2d 898]; *Harris* v. *Kessler* (1932) 124 Cal.App. 299, 301-302 [12 P.2d 467]; *Righetti* v. *Monroe, Lyon & Miller, Inc.* (1930) 109 Cal.App. 333, 335-336 [293 P. 114]; *Young* v. *Burchill* (1929) 96 Cal.App. 341, 343-344 [274 P. 379]; and *Dunn* v. *Barry* (1917) 35 Cal.App. 325, 327-328 [169 P. 910]; but cf. *Bisno* v. *Sax, supra,* 175 Cal.App.2d 714, 725-729.) The adoption of section 2924c of the Civil Code in 1933 renders any dispute as to the right to cure the default academic. (See *Magnus* v. *Morrison, supra,* 93 Cal. App.2d 1, 3.) This right, however, does not extend, as urged by plaintiffs, to a right to have the payment of the delinquent instalments postponed to a time past the normal maturity of the note. The instalments become due according to the terms of the contract.[7] ▮ The failure of plain-

---

[6]Civil Code section 2924c provides in pertinent part: "Whenever all or a portion of the principal sum of any obligation secured by deed of trust . . . on real property hereafter executed has, prior to the maturity date fixed in such obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, . . . the trustor . . . at any time within three months of the recording of the notice of default under such deed of trust . . . if the power of sale therein is to be exercised, . . . may pay to the beneficiary . . . *the entire amount then due* under the terms of such deed of trust . . . and the obligation secured thereby (including costs and expenses actually incurred in enforcing the terms of such obligation, deed of trust or mortgage, and trustee's or attorney's fees actually incurred not exceeding . . . fifty dollars ($50) in case of a deed of trust or one-half of one per cent of the entire unpaid principal sum secured, whichever is greater) *other than such portion of principal as would not then be due had no default occurred,* and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if no such acceleration had occurred. . . ." (Italics added.)

[7]It is generally the rule that payments on instalment obligations become due according to the terms of the agreement. If the obligee fails to take steps to collect such instalments on an unsecured obligation, either by action to collect the instalment, or by action to collect the entire obligation if he has a right to accelerate and exercises such right, he may find the right to collect some instalments barred by the

tiffs to prove that anything less than that demanded was due, and their failure to allege and prove any tender or payment under section 2924c, which would cure the default, rendered the proposed allegations and the requested amendment superfluous. There was, therefore, no prejudicial error in striking the filed amendments, in denying the motion to so amend, and in failing to make the findings requested by plaintiffs. They failed to show grounds for enjoining the sale under the deed of trust. (See *Engelbertson* v. *Loan & Bldg. Assn., supra,* 6 Cal.2d 477, 479; *Birkhofer* v. *Krumm, supra,* 27 Cal.App.2d 513, 523-524; and *Bledsoe* v. *Pacific Ready Cut Homes, Inc., supra,* 92 Cal.App. 641, 645.)

## V

The note recites, "If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees." The provisions in the deed of trust were not before the court. The court found and concluded that the defendant as the prevailing party in this action was entitled to attorney's fees in the sum of $750, and gave judgment accordingly.

"An agreement for payment of attorney's fees of the prevailing party is enforceable as an item of special damages, and a contract may permit recovery of attorney's fees in the event of suit to enforce the contract. [Citations.]" (*Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774, 784 [78 Cal.Rptr. 761].) "The purpose of upholding an attorney's fees provision in a promissory note is to allow a plaintiff to recover the full amount due him without such amount being diminished by attorney's fees." (*Id.,* at p. 788.)

Plaintiffs contend that since the action was not instituted to collect on the note, the clause in the note is inapplicable. This contention takes too narrow a view of the purport of the provision, and overlooks its purpose as noted above. The action by the plaintiffs insofar as it alleged that the provisions of the note had been modified was an action instituted on the note. It is generally recognized that a provision for attorney's fees will be applicable even though the action is instigated by the obligor rather than the obligee. "Attorney's fees may be recovered where the adverse claim is made by the mortgagor or grantor. [Citations.]" (*Techow* v. *Pollack* (1952) 111 Cal.App.2d 556, 558 [244 P.2d 915]. See also *Genis* v. *Krasne* (1956) 47 Cal.2d 241, 246 [302 P.2d 289]; *Gudel* v.

statute of limitations. (See *Trigg* v. *Arnott* (1937) 22 Cal.App.2d 455, 459 [71 P.2d 330].) Here the continued payments and the existence of a power of sale render any limitation of action inapplicable.

*Ellis* (1962) 200 Cal.App.2d 849, 858 [19 Cal.Rptr. 751]; *Munier* v. *Hawkins* (1961) 190 Cal.App.2d 655, 663-664 [12 Cal.Rptr. 274]; and *Hewlett* v. *Evans* (1922) 56 Cal.App. 344, 346-347 [205 P. 492].)[8]

Section 726 of the Code of Civil Procedure provides in part, "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real property, which action must be in accordance with the provisions of this chapter. . . ." It is settled in this state that "the creditor must rely upon his security before enforcing the debt." (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 38 [27 Cal.Rptr. 873, 378 P.2d 97].) Plaintiffs contend that the provisions of the judgment which read, "That Plaintiffs pay to Defendant . . . the sum of seven hundred fifty dollars ($750.00) as attorney's fees . . ." violate the foregoing provision.

Section 438 of the Code of Civil Procedure[9] provides in pertinent part, ". . . the right to maintain a counterclaim shall not be affected by the fact that either plaintiff's or defendant's claim is secured by mortgage or otherwise. . . ." (See *Nelson* v. *Bank of America* (1946) 76 Cal.App.2d 501, 510 [173 P.2d 322]; and *Cohen* v. *Bonnell* (1936) 14 Cal.App.2d 38, 41 [57 P.2d 1326].) Section 666 (see fn. 9 above) provides in part, "If a counterclaim, established at the trial, exceed the plaintiff's demand, judgment for the defendant must be given for the excess; or if it appear that the defendant is entitled to any other affirmative relief, judgment must be given accordingly." The statutes appear to contemplate that a personal judgment may be given under the circumstances of this case.

"The fact that a note is secured is an affirmative defense which must be pleaded. [Citations.]" (*Salter* v. *Ulrich* (1943) 22 Cal.2d 263, 267 [138 P.2d 7, 146 A.L.R. 1344]. See also *Spector* v. *National Pictures Corp.* (1962) 201 Cal.App.2d 217, 225-226 [20 Cal.Rptr. 307].) Section 462 of the Code of Civil Procedure (see fn. 9 above) provides in pertinent part, ". . . the statement of any new matter in the answer . . . constituting a . . . counterclaim, must, on the trial, be deemed controverted

---

[8]It is recognized that the terms of an agreement for attorney's fees may vary, and that problems may arise as to which party is the "prevailing" or "successful" party, and whether such fees were "necessary." (See *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 272-274 [81 Cal.Rptr. 849, 461 P.2d 33].) In this case, however, the action was instituted on the note and defendant was the prevailing party so no such questions are raised.

[9]By amendments adopted in 1971 (Stats. 1971, ch. 244, p. 372) and effective July 1, 1972 (*id.*, § 66), counterclaims will be abolished (*id.*, § 23, adding § 428.80 to the Code Civ. Proc.). At the same time sections 438, 462 and 666 of the Code of Civil Procedure and other sections which relate to counterclaims will be amended or repealed (*id.*, §§ 41, 47 and 54).

by the opposite party." *In re Garcelon* (1894) 104 Cal. 570 [38 P. 414] construed this provision as follows: "It is true that, by the terms of section 462 of the Code of Civil Procedure, new matter in an answer is deemed to be controverted without any special replication, and under that section a plaintiff has the right, while not denying the genuineness and due execution of an instrument set out in an answer, to show other matters in confession or avoidance thereof. But unless he brings to the attention of the trial court his purpose to offer such evidence, that court cannot assume that he desires to make any such defense, . . ." (104 Cal. at pp. 581-582. See also *Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 745 [47 P.2d 273].) ▓▓▓ So here the plaintiffs by failure to direct the trial judge's attention to the matter now raised on appeal are estopped to object to the personal judgment, if it may be deemed to be such (see below).

In any event the defendant has indicated that he is satisfied to accept payment of this obligation out of his security, if plaintiffs' objection is valid, and if plaintiffs fail to pay it. Since the judgment may be interpreted as merely declaring what is due under the terms of the note, including the attorney's fees, and in view of the disposition to be made of the case (see below), any uncertainty in the matter can properly be adjusted by the trial court on remand. Nevertheless, no cognizable error is found in the judgment of the trial court on this point.

At the time the note and deed of trust were executed and delivered section 580b of the Code of Civil Procedure provided in pertinent part, "No deficiency judgment shall lie in any event after any sale of real property . . . under a deed of trust . . . given to secure payment of the balance of the purchase price of real property." (Cf. Stats. 1963, ch. 2158, § 1, p. 4500. See *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 41-42; and *Lange* v. *Aver* (1966) 241 Cal.App.2d 793, 799 [50 Cal.Rptr. 847].) Plaintiffs assert that the judgment, if construed as a personal judgment for attorney's fees, violates the foregoing provision.

The attorney's fees awarded in this case, like other amounts which might be advanced by the obligee and be secured by the terms of the deed of trust, are not a part of the purchase price. In *Roseleaf Corp.* v. *Chierighino, supra,* the opinion states: "Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citations.] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers

were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." (59 Cal.2d at p. 42.)

The attorney's fees and other expenses which may subsequently be incurred or advanced and be secured by the deed of trust resemble loans and ordinary advances. The reason for the special rule for purchase money mortgages is not applicable. When the obligee advances funds as a lender and not as a vendor he may in some cases recover a deficiency judgment. (See *Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263-264 [78 Cal. Rptr. 170, 455 P.2d 106]; *Manning* v. *Queen* (1968) 263 Cal.App.2d 672, 674 [69 Cal.Rptr. 734]; and *Syrek* v. *Gould* (1966) 244 Cal. App.2d 149, 151-153 [52 Cal.Rptr. 827].) Moreover, damages arising out of the vendor-vendee relationship may sometimes be payable despite the provisions of section 580b. (See *Paap* v. *Von Helmholt* (1960) 185 Cal.App.2d 823, 830 [8 Cal.Rptr. 568].)

In view of the foregoing, and because the plaintiffs failed to raise the question in the trial court it is questionable whether they may now raise this objection to the form of the judgment. Although no reversible error is found, the stipulation that the award be satisfied out of the security if plaintiffs fail to pay it, makes further pursuit of the question unnecessary.

No reversible error is found in the judgment awarding the defendant attorney's fees.

## VI

Plaintiffs contend that they were entitled to attorney's fees because this action was necessary for the protection of their property, and because the provisions of the note when construed in the light of section 1717 of the Civil Code[10] entitle them to such an award. Since the plaintiffs failed to establish their claims, and are not a prevailing party, it is unnecessary to determine to what extent attorney's fees may be an element of damages to be assessed against the very party contesting the applicant's claim, as

---

[10]Civil Code section 1717, adopted in 1968, provides: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

distinguished from one who has in effect warranted title and by failing to defend against the claims of others has forced the applicant to incur such expense. (Cf. *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645]; and *Ruth* v. *Lytton Sav. & Loan Assn.* (1968) 266 Cal.App.2d 831, 844-845 [72 Cal.Rptr. 521], with *Isthmian Lines, Inc.* v. *Schirmer Stevedoring Co.* (1967) 255 Cal.App.2d 607, 612 [63 Cal.Rptr. 458].) Nor is it necessary to determine whether the provisions of section 1717 should be applied to an instrument executed in 1960. (See *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 593-597 [97 Cal.Rptr. 30] [hg. den. Oct. 21, 1971] upholding application of § 1717 to prior contracts; and cf. *Malibou Lake Mountain Club, Ltd.* v. *Smith* (1971) 18 Cal.App.3d 31, 35, fn. 2 [95 Cal.Rptr. 553] [hg. den. Aug. 13, 1971] dictum that § 1717 does not apply to contracts executed before its effective date.)

## VII

From the foregoing it may be concluded that the judgment should be affirmed and the defendant awarded costs and attorney's fees on appeal. "It is well settled that where a promissory note provides for the recovery of reasonable attorney's fees incurred in the enforcement thereof it includes an allowance for legal services rendered on appeal as well as in the trial court. However, which court makes the order fixing attorney's fees on appeal depends on the procedure utilized by the appellate court. Inasmuch as this court has the authority to set reasonable attorney's fees for services rendered on appeal [citations], it may, as it frequently does, outright grant the request for such fees and order payment thereof; or if it does not elect to assume the burden of determining the amount of the fee it may direct the superior court after the remittitur is filed to hear an application for attorney's fees for services rendered on appeal and fix the reasonable amount thereof." (*American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 67 [76 Cal.Rptr. 898]. See also *Clejan* v. *Reisman* (1970) 5 Cal.App.3d 224, 241 [84 Cal.Rptr. 897]; and cf. *Martindell* v. *Bodrero* (1967) 256 Cal.App.2d 56, 62-63 [63 Cal.Rptr. 774].) For reasons which follow the trial court is directed to determine the amount of such fees.

In their briefs the plaintiffs' pray that if their contentions concerning the novation, and waiver of the defendant's rights to the accrued payments are overruled, the case be remanded in any event for a determination of the amount necessary to reinstate the loan under the provisions of section 2924c of the Civil Code. (Fn. 6 above; and see *Producers Holding Co.* v. *Hill* (1927) 201 Cal. 204, 209 [256 P. 207]; *More* v. *Calkins*

(1890) 85 Cal. 177, 187-189 [24 P. 729]; *Manning* v. *Queen, supra,* 263 Cal.App.2d 672, 674; and *Bisno* v. *Sax, supra,* 175 Cal.App.2d 714, 725-729.) This prayer comes with ill grace. As has been pointed out above, plaintiffs have at no time offered to do equity. They have adamantly insisted on an alleged right to compel the defendant to wait for his money because he has been lenient in the past.

Nevertheless, the fact remains that this action was commenced some 13 days before the expiration of the period granted by section 2924c in which the plaintiffs could relieve themselves of the foreclosure by paying up everything due except that portion of the entire obligation which has been accelerated. Without determining the point it is recognized that it is arguable that those 13 days may remain when the judgment in this action becomes final. Many more payments and collateral obligations such as insurance, taxes, and the attorney's fees attendant to these proceedings may have become due during the protracted period of this litigation. The history of the relationship of the parties indicates that further lawsuits are within the realm of possibility. "Equity having taken jurisdiction over a cause does complete justice, even to the extent of exceeding the specific prayers of the complaint when necessary." (*Bisno* v. *Sax, supra,* 175 Cal.App.2d 714, 729.) It is in the interests of both parties that the case be remanded for a determination of the amount necessary to cure the default under the provisions of section 2924c of the Civil Code.

The judgment is affirmed insofar as it determines that plaintiffs are obligated to pay defendant according to the terms of the promissory note executed May 25, 1960, and that plaintiffs are obligated to pay defendant the sum of $750 attorney's fees and $70.80 costs for proceedings in the trial court. The judgment is modified to provide that a further hearing be held to determine, as of the date of such hearing, the amount necessary under the provisions of section 2924c of the Civil Code, including attorney's fees and costs hereby awarded to defendant on the appeal, to cure the default then existing in the obligations imposed by the note and deed of trust, and that the preliminary injunction be continued for 13 days after such determination, to thereupon be dissolved unless plaintiffs' pay to defendant the sum so determined, in which event the injunction shall be made permanent as to any sale pursuant to the notice of default recorded April 16, 1969.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied June 21, 1972, and appellants' petition for a hearing by the Supreme Court was denied July 19, 1972.